HUNTINGTON ALLOYS, INC.,
Appellant,

v.

UNITED STEELWORKERS OF AMERI-
CA; Local No. 40 of the United Steel-
workers of America; Wilbert W. Ward,
individually and as Staff Representative
of United Steelworkers of America; R.
L. Hinchman, individually and as Presi-
dent of Local No. 40 of the United Steel
Workers of America; T. Day, Jr., indi-
vidually and as Vice President of Local
No. 40 of the United Steelworkers of
America; D. E. Davis, individually and
as Treasurer of Local No. 40 of the
United Steelworkers of America, Appel-
lees.

No. 79–1354.

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1980.

Decided June 12, 1980.

William A. Ziegler, Jr., New York City
(Nadine Strossen, Sullivan & Cromwell,
New York City, on brief), for appellant.

Rudolph Milasich, Jr., Asst. Gen. Counsel,
United Steelworkers of America, Pitts-
burgh, Pa. (Stanley M. Hostler, Hostler &
Shinaberry, Charleston, W. Va., Bernard
Kleiman, Chicago, Ill., on brief), for appel-
lees.

Before WINTER, WIDENER and PHIL-
LIPS, Circuit Judges.

WINTER, Circuit Judge:

The district court confirmed and enforced
an arbitration award against an employer
despite the employer's claim that it was not
timely under the provisions of the bargain-
ing agreement pursuant to which the award
was made and was therefore not binding.
The district court ruled that the time con-
straints of the bargaining agreement had
been waived by the parties, that they may
have been met, and moreover, that the em-
ployer was not prejudiced by the late
award, so that the district court had discre-

tionary authority to enforce it. The employer appeals and we reverse, remanding the case to the district court for an order invalidating the award.

### I.

Huntington Alloys, Inc. (the "employer") suspended an employee for his alleged involvement in two explosions of "booby trap" devices at its plant at Huntington, West Virginia. A grievance concerning the suspension was lodged. When it was not resolved at the local level, it was submitted to a board of three arbitrators in accordance with Article XXIV F of the collective bargaining agreement between the employer and the union. In pertinent part, that contract provision states:

### ARTICLE XXIV

### ADJUSTMENT OF GRIEVANCES

. . . . .

### F. Arbitration

. . . . .

2. Any Board of 3 Arbitrators appointed under the provisions of this Article shall conduct the arbitration hearing at Huntington, West Virginia, and *shall deliver its decision to both parties within 30 days after the end of the arbitration hearing.*
3. The decision of a Board of 3 Arbitrators . . . shall be conclusive and binding upon the parties hereto . . . However, *no decision of a Board of 3 Arbitrators . . . shall be conclusive and binding upon the parties hereto unless delivered to both parties within the time specified under Paragraph 2 above, or any extension thereof agreed to in writing by both parties,* and unless the decision is signed by a majority of the arbitrators prior to delivery to the parties . . . (emphasis added).

The arbitration board held its hearing on August 15, 1978, at Huntington. The board consisted of Dr. Jolen W. May, Chairman, who was appointed by agreement of the employer and the union, Charles D. Lindberg, Esq., appointed by the employer, and Mr. Thomas Johnson, appointed by the union. William I. Ziegler, Esq. was counsel for the employer and Mr. W. W. Ward appeared for the union. After all of the evidence was received, the transcript shows that the following discussion occurred:

ARBITRATOR MAY: What is your preference, the filing of briefs or oral summation?

MR. ZIEGLER: I think we'd better file something. I think it is really unreasonable to detain you in view of the time.

ARBITRATOR MAY: Transcript in 10 days and the briefs should be filed on or before 30 days.

MR. ZIEGLER: 30 days from the receipt of the transcript, Mr. Chairman?

ARBITRATOR: Yes . . . .

ARBITRATOR LINDBERG: My understanding is a draft of the decision will be circulated to the Arbitrators first before it is finalized. The other question I have is how does the 30 day provision work in the contract with respect to Arbitrator's award within 30 days after the conclusion of the hearing, I believe?

MR. ZIEGLER: Our habit has been to run it from the receipt by the Arbitrator of the briefs, is that not right, Bud?

MR. WARD: 30 days from the receipt of the transcript.

MR. ZIEGLER: The Arbitrator's time, the Board's time within which to get out the award starts running from the receipt of the briefs.

MR. WARD: The briefs.

ARBITRATOR LINDBERG: In other words, the end of the arbitration hearing is when the briefs are received and then the 30 days for the Arbitrator's decision starts to run?

MR. ZIEGLER: That has been our habit.

ARBITRATOR MAY: The FMCS[1] Rules are 60 days.

MR. ZIEGLER: Our contract I think has 30. If that's going to represent a problem to the Board, I'm sure we would

---

1. Federal Mediation and Conciliation Service.

be prepared to talk about some different times. We could stipulate some different time for purposes of this case.

ARBITRATOR MAY: By the time we get it to the respective Arbitrators and get their signatures and get it back for final draft and so on, it might run it fairly close. I would prefer agreement on the waiver of the 30 days.

MR. ZIEGLER: Would you be content, Mr. Chairman, if for purposes of this case we substituted some fixed number of days for the 30, something suits you? We have not been in the habit of an open-ended limit in that respect. I think we would prefer a period of dates.

ARBITRATOR MAY: Can we make it 60 days so I can accommodate all the mechanics involved.

MR. ZIEGLER: I understand perfectly.

ARBITRATOR MAY: Then the final draft will be 60 days from the date of the briefs or from the receipt of the briefs.

Pursuant to this arrangement, the union filed its brief on September 14, 1978. The employer mailed its brief on September 26, 1978, and it was received by the Chairman on October 3, 1978. These filings[2] were both within thirty days from the date of the parties' receipt of the transcript.

Sixty days from the date that the last brief was received was December 2, 1978. Because a decision had not been forthcoming, on that date the employer wrote to Dr. May withdrawing the Board's authority to decide the grievance. Not until January 4, 1979 did the employer receive a copy of a decision and an award. The document received on that date was signed by the Chairman May and Mr. Johnson, the union arbitrator. The document had been mailed on December 31, 1978. While the first page bore a stamp of the date of December 18, 1978, the last page was dated October 18, 1978.

The district court found that following the filing of briefs, Dr. May sent a thirty-four page draft of a decision sustaining the grievance to his co-panelists. The draft was mailed October 20, 1978. The union arbitrator signed and returned it on October 25, 1978. The employer's arbitrator requested a conference regarding certain evidentiary matters contained in the draft. That conference was held November 15, 1978, and it resulted in no changes in the draft. Dr. May, by letter dated November 28, 1978 but not postmarked until December 5, 1978, forwarded copies of the final decision to his co-panelists. Mr. Lindberg received his copies on December 6, 1978, but because he had already received a copy of the employer's letter withdrawing the Board's authority to act, he returned them to Dr. May.

The present litigation was instituted by the employer pursuant to 29 U.S.C. § 185 for a declaratory judgment adjudicating the purported arbitration award void. Defendants responded with a motion to confirm the arbitration award, which the district court subsequently granted. The district court recognized that the time limits in the collective bargaining agreement were mandatory, but it held that the agreement to substitute sixty for thirty as the number of days within a decision was required constituted an indefinite extension of the contractual time limit and therefore a waiver of its mandatory requirement. Additionally, it held that the receipt by employer's arbitrator of the draft of the decision prepared by Dr. May in October was constructive receipt by the employer. Finally, it held that the employer had not shown that it was prejudiced by the lateness of the decision and that, absent a showing of prejudice, the district court had discretionary authority to enforce the award.

II.

There can be no doubt that the literal language of Article XXIV F(2) and (3) of

---

**2.** Although the employer's brief was not received until October 3, 1978, it was mailed on September 26, 1978. The finding that it was timely filed was implicitly made by the district court, and this conclusion comports with the common understanding of the term "filing." *See, e. g.,* Fed.R.App.P. 25(a).

the collective bargaining agreement requires that, to be conclusive and binding, any decision of the Board of Arbitrators must be rendered and delivered to the parties within thirty days after "the end of the arbitration hearing" unless the parties agree otherwise "in writing." We think that there was such an agreement in this case, but the agreement was much more limited than the district court concluded.

As we read the exchange of comments following the close of the receipt of evidence at the arbitration hearing, the parties agreed upon two things: first, they agreed that "end of the arbitration hearing" meant the date of the last receipt of briefs by Dr. May provided that briefs were filed no more than thirty days after the transcript was made available to the parties, and second, that the arbitrators would have sixty days, rather than thirty, in which to deliver their final decision to the parties. Because the oral agreements of the parties were reduced to writing when the record was transcribed, the amendment to Article XXIV was made in the manner it prescribes.[3] It is significant, we think, that orally the parties made no mention of any departure from the language making mandatory the delivery of a decision within a prescribed time and providing that an untimely decision is not "conclusive and binding" on the parties. Short of a specific agreement that this provision be waived, we think that no waiver of this provision can be found, because it has long been the rule in this circuit that "[a]rbitration deprives the judiciary of jurisdiction over the particular controversy and the courts have long ruled that there must be strict adherence to the essential terms of the agreement to arbitrate." *Brotherhood of Railway and Steamship Clerks v. Norfolk Southern Ry. Co.*, 143 F.2d 1015, 1017 (4 Cir. 1944). Even in a case where the language as to time of decision did not expressly provide that an untimely award would be void, the Sixth Circuit has recently held an untimely award to be void on the ground that it was not returned within the period specified in the bargaining agreement. *See Detroit Coil Co. v. I. A. M. Lodge 82*, 594 F.2d 575, 581 (6 Cir. 1979).

We therefore conclude that the parties did not waive the provision of the arbitration agreement that an award to be conclusive and binding must be delivered within the designated period—in this case sixty days from October 3, 1978, which was December 2, 1978. We consider next whether there is any valid reason why we should not apply the contract provision to hold that the award here was void for untimeliness.

### III.

We do not consider that receipt of Dr. May's draft of an award by Mr. Lindberg in October, 1978 was receipt by the employer of a decision. In the first place, it was signed by no one although the bargaining agreement would require at least two signatures prior to delivery to make a decision, and secondly, it purported to be only a draft and not a final decision. Dr. May's letter made perfectly clear that a latter, final draft copy would be forwarded for signature. Moreover, we do not consider that Mr. Lindberg was the agent of the employer for the purpose of delivery of the decision.

Nor do we think that Mr. Lindberg improperly delayed preparation of the decision. He did ask for a meeting to advocate modification of Dr. May's language; and although he was afforded the meeting, he was unsuccessful in effecting a change in the opinion. Nothing in the record suggests that the changes he proposed were frivolous or that he proposed them for purposes of delay. Absent such proof, we think that he did nothing more than a conscientious arbitrator had a right to do—advance and advocate his views not only as to the basis of the decision to be reached, but how the result should be articulated. It is significant also that had Dr. May and the

---

3. We also note that had these oral agreements not been reduced to writing, strict adherence to the writing requirement would result in a thir-ty-day time limit, which would only reinforce the conclusion that the award was untimely.

union arbitrator thought that Mr. Lindberg was improperly delaying them, they could, under the terms of the arbitration agreement, have rendered the decision themselves.

## IV.

The authorities cited by the district court to support its assertion that it had discretionary power to enforce an untimely award as long as there was no showing of prejudice simply do not support that proposition. There is a dictum to that effect in *West Rock Lodge No. 2120, Machinists v. Geometric Tool Co.*, 406 F.2d 284, 286 (2 Cir. 1968), but the dictum is in the alternative: "if no objection to the delay has been made prior to the rendition of the award *or* there is no showing that actual harm to the losing party was caused by the delay [the late award should be upheld]." (Emphasis added). In the instant case, objection to the delay was promptly lodged so that the Second Circuit dictum would not save the award.

To the extent that it would result in the enforcement of an untimely award if no prejudice is shown, the Second Circuit's pronouncement appears to be unique. But even if it is not, we think that this circuit is committed to the rule that the limitations agreed to by the parties in regard to arbitration are to be given literal effect. Here the parties agreed that an untimely decision would not be conclusive and binding. We see nothing improper in holding them to their agreement.

We reverse the judgment of the district court and remand the case to it for entry of a declaratory decree adjudging the arbitration award not conclusive and non-binding, and giving such other relief as is appropriate.

REVERSED AND REMANDED.