Morton M. HILL, Jr.,
Plaintiff-Appellant,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellee.

No. 86–2202.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1987.

Decided March 16, 1987.

As Amended March 17, 1987.

Rehearing and Rehearing En Banc Denied May 13, 1987.

---

Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, P.C., Kokomo, Ind., for plaintiff-appellant.

Linzey D. Jones, Sidley & Austin, Chicago, Ill., for defendant-appellee.

Before POSNER and EASTERBROOK, Circuit Judges, and PARSONS, Senior District Judge.[*]

POSNER, Circuit Judge.

Hill, a brakeman fired by the Norfolk and Western railroad, took the matter to arbitration before a public law board, see 45 U.S.C. § 153 Second, which unanimously rejected his claim that he had been fired in violation of the collective bargaining agreement between the railroad and his union. He then brought this suit under 45 U.S.C. § 153 First (q) to set aside the board's decision, lost in the district court, and appeals to us. The appeal has no merit; indeed, it reveals a serious misunderstanding of the scope of federal judicial review of arbitration decisions.

As we have said too many times to want to repeat again, the question for

---

[*] Hon. James B. Parsons of the Northern District of Illinois, sitting by designation.

decision by a federal court asked to set aside an arbitration award—whether the award is made under the Railway Labor Act, the Taft-Hartley Act, or the United States Arbitration Act—is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract. See, e.g., *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers*, 802 F.2d 247, 253 (7th Cir.1986), and cases cited there; *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry.*, 768 F.2d 914, 921 (7th Cir.1985). If they did, their interpretation is conclusive. By making a contract with an arbitration clause the parties agree to be bound by the arbitrators' interpretation of the contract. A party can complain if the arbitrators don't interpret the contract—that is, if they disregard the contract and implement their own notions of what is reasonable or fair. A party can complain if the arbitrators' decision is infected by fraud or other corruption, or if it orders an illegal act. But a party will not be heard to complain merely because the arbitrators' interpretation is a misinterpretation. Granted, the grosser the apparent misinterpretation, the likelier it is that the arbitrators weren't interpreting the contract at all. But once the court is satisfied that they were interpreting the contract, judicial review is at an end, provided there is no fraud or corruption and the arbitrators haven't ordered anyone to do an illegal act.

An operating rule of the Norfolk and Western railroad, incorporated by reference in the collective bargaining agreement with Hill's union, provides that "the conduct of any employee leading to conviction of any felony, or of any misdemeanor involving the unlawful use, possession, transportation, or distribution of narcotics or dangerous drugs, or of any misdemeanor involving moral turpitude is prohibited." In 1982 Hill was charged in a criminal court with a felony violation of Indiana's drug laws. At first he pleaded not guilty; but in September 1983, pursuant to a plea

bargain, he filed with the court a motion to plead guilty to possession of marijuana, a misdemeanor. In the motion he said that "I know the Court will not accept a plea of GUILTY from anyone who claims to be innocent, and I make no claim of innocence. I now state that I did commit the crime to which I am pleading guilty." He asked the court to sentence him under an Indiana statute that allows a court to sentence a criminal defendant without entering a "judgment of conviction." Indiana Code § 35–48–4–12. Pursuant to this provision the judge suspended further proceedings in the case and sentenced Hill to probation. He also imposed a $500 fine (the proceeds to go to the police department, which wanted a new camera). But he did not enter a formal judgment. A few months later the prosecutor dismissed the criminal charge.

Shortly before it was dismissed, the railroad got wind of Hill's plea of guilty, and after verifying the plea and sentence from court records, it suspended him on January 5, 1984. At the same time it notified him that, pursuant to the collective bargaining agreement, the railroad would conduct an investigatory hearing on January 13 (later postponed to January 27). At the hearing, Hill's lawyer in the criminal action testified that Hill had told him that a malicious neighbor had seeded Hill's corn patch with marijuana, which had grown into the "mere sprouts" (18 inches high) seized by the authorities, and that Hill did not know how other marijuana had found its way into his unlocked shed, where it was also seized. On February 8 the railroad notified Hill that he was fired. The arbitration proceeding before the public law board followed. The board held that the word "conviction" in the collective bargaining agreement encompassed the disposition of Hill's criminal case and that the railroad had not violated the agreement by firing him.

Hill makes four arguments. (1) He was not convicted within the meaning of the collective bargaining agreement. (2) Even if he was, the agreement does not authorize discharge as a sanction for "conduct ... leading to conviction." (3) The railroad denied him due process by failing to comply

with certain procedural provisions in the collective bargaining agreement. (4) The public law board's decision is void because untimely.

1. Hill asks us to interpret the collective bargaining agreement and conclude that the arbitrators erred in holding that he engaged in "conduct ... leading to conviction" within the meaning of the agreement. As we said earlier, we have no power to reinterpret the agreement. This is the bedrock principle of federal judicial review of arbitration awards and the failure of Hill's counsel to conform his submission to that principle falls short of minimum professional standards of representation.

Hill's argument that the arbitrators committed some form of *lèse majesté* by refusing to conform the contractual meaning of "conviction" to the meaning that the word bears in the law of Indiana is absurd on two counts. First, the statute under which he was sentenced does not provide that the defendant punished under it is not "convicted," as if it were possible to impose criminal punishment (such as probation and a fine) on a person who had not been convicted of a crime. The statute merely provides that no "judgment of conviction" shall be entered. The collective bargaining agreement says nothing about conduct leading to a *judgment* of conviction, so there is no inconsistency between Indiana law and the arbitrators' interpretation of the agreement. Second, the agreement is in force in 20 states and there is no indication that the parties intended its words to be interpreted in accordance with the criminal procedure of Indiana.

■ Hill's further argument that the parties agree that Indiana law governs this case is false. The parties do not agree, and it is unlikely they would, since this case is under the federal Railway Labor Act. But maybe all Hill means is that the collective bargaining agreement requires, as a basis for sanctions under the operating rule in question, that the worker have been duly convicted, necessarily under some state or federal law. If that is what he is arguing, it exposes a second fallacy underlying his attack on the arbitrators' interpretation

(the first being his misconception of the scope of judicial review of that interpretation). This fallacy is to suppose that the word "conviction" has a single meaning: and that the one which Hill argues (probably erroneously, as we are about to see) it bears in the Indiana statute under which he was sentenced. The word has three meanings that are potentially relevant to this case. First, it means a formal criminal judgment which becomes a part of one's record and can be used to enhance the punishment for a subsequent crime. Hill was not convicted in this sense. Second, it means a determination of guilt that is used as the predicate for imposing criminal punishment. That is the sense in which Hill was convicted. He was given a criminal punishment—probation—in a criminal proceeding. In no civilized system of criminal justice can you be sentenced without being convicted, whether or not a formal judgment of conviction is entered. Third, "conviction" could mean simply an authoritative determination of guilt, whether or not any punishment followed; in this view, the determination of guilt in a criminal proceeding is a substitute for the railroad's own factfinding.

The second sense was the one used by the Supreme Court in *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 112–14, 103 S.Ct. 986, 991–92, 74 L.Ed.2d 845 (1983), in holding that a man who had pleaded guilty to an offense and been placed on probation, but without entry of a formal judgment, had been "convicted" within the meaning of the federal gun control laws. This is the meaning of "conviction" in Indiana as well. Hill was sentenced, hence "convicted"; he just didn't suffer the indignity of a formal "judgment of conviction." See *Schalkle v. State*, 272 Ind. 134, 140, 396 N.E.2d 384, 389 (1979).

So far as the Norfolk and Western railroad is concerned, the relevant sense of conviction is either the second or the third, but not the first. For reasons too obvious to dwell on, the railroad doesn't want to employ a brakeman who has been found guilty of violating the drug laws. The railroad doesn't give a hoot whether he is

allowed to plead guilty to a lesser offense than the one with which he was originally charged (for the collective bargaining agreement expressly prohibits misdemeanor drug violations); or sentenced to pay a $500 fine; or let off with a fine plus probation, but no criminal record, because the police want to use the proceeds of the fine to buy a camera; or sentenced under a first offender's statute that allows the record of the conviction to be expunged. Cf. *Dickerson v. New Banner Institute, Inc., supra,* 460 U.S. at 114–22, 103 S.Ct. at 992–96. Hill pleaded guilty and the plea was accepted and that is the end of it so far as the railroad is concerned. Of course its position was not binding on the arbitrators but they agreed with it and their conclusion was certainly reasonable. *Anyway all that matters is that they were interpreting the contract.*

We have italicized this last sentence to drill home the fundamental point that the judicial function in arbitration cases is at an end when the court is satisfied that the arbitrators were interpreting the contract rather than doing something else. The correctness of their interpretation is irrelevant. Suppose for example that these arbitrators had found the dissent in *Dickerson* more persuasive than the majority opinion and had decided that the dissent provided the best guide to the meaning of the word "conviction" in the collective bargaining agreement. A court could not conclude that the arbitrators were acting lawlessly, and set aside the award.

After saying that "the claimant did in fact violate the rules of the Carrier," the public law board added: "The Carrier is very concerned in view of the number of serious accidents that have involved railroads and the investigations being carried on by the government into the use of drugs and alcohol. Under the circumstances herein, there is no justification to set the discipline aside." If this were read to mean that the board had upheld Hill's discharge not because the collective bargaining agreement authorized the discharge but because the board or the railroad is concerned about the use of illegal drugs, there would be an argument that the board

had strayed outside its lawful domain, which is confined to contract enforcement. But the opinion cannot be read so. Having found that Hill had violated the "conduct ... leading to conviction" rule (the reason for the board's reference to "rules" is that the same ground for discharge appears in two provisions incorporated in the collective bargaining agreement), the board then turned to the question whether it should exercise discretion to mitigate the severity of the sanction, and declined to do so. It is generally assumed that the parties to collective bargaining agreements intend that the arbitrators will have some discretion with regard to sanctions for misconduct. See, e.g., *Zeviar v. Local No. 2747, Airline, Aerospace & Allied Employees,* 733 F.2d 556 (8th Cir.1984) (per curiam); Elkouri & Elkouri, How Arbitration Works 664–70 (4th ed. 1985). Hill doesn't attack the board's failure to exercise whatever discretion it might have; he complains about its interpretation of the collective bargaining agreement as authorizing his dismissal. As to this it is plain from Hill's own manner of argument that the board was attempting to interpret the collective bargaining agreement rather than imposing private notions of workplace justice.

■ 2. Hill further argues, however, that even if he engaged in conduct leading to conviction within the meaning of the collective bargaining agreement, the agreement doesn't clearly make discharge a permissible sanction for such conduct, and he says that any ambiguity in the agreement must be construed against the railroad. Again Hill misconceives the scope of judicial review. We have no authority to apply the principles of contract interpretation and, if we come up with a different conclusion from the arbitrators, to set their decision aside. Hill regards the agreement as ambiguous because the "conduct ... leading to conviction" rule omits mention of the sanctions for its violation, and because another operating rule, also incorporated in the collective bargaining agreement, lists several forms of conduct that "are sufficient cause for dismissal," including negligence, sleeping on duty, willful neglect of

duty, giving false statements, and dishonesty—and neither "conduct ... leading to conviction" nor possession or use of illegal drugs is on the list. Taking these points in reverse order, we first note that in ordinary language criminal misconduct is a species of dishonesty and that the second rule appears to use the word in this sense, for it lists the giving of false statements (which is dishonesty in the sense of lying) as a separate ground for dismissal from dishonesty. That the rule prohibiting "conduct ... leading to conviction" mentions no sanctions does not imply that none can be imposed. Except for Hill's strained reading of the "sufficient cause for dismissal" rule, there is no basis in the agreement for doubting that conduct leading to conviction is punishable by any appropriate sanction, including dismissal. Cf. *Zeviar v. Local No. 2747, supra*. Contracts contain implicit as well as explicit terms, and arbitrators' authority to interpret the latter is as great as their authority to interpret the former. See, e.g., *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, supra*, 802 F.2d at 253; *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 185–86 (7th Cir. 1985). An implicit term in the collective bargaining agreement is that the railroad may punish a violation of its operating rules with any sanction up to and including dismissal, subject to the arbitrators' discretion (the precise bounds of which we need not consider) to insist on a more lenient sanction than that chosen by the railroad.

■ The language we quoted earlier from the public law board's opinion may well indicate that the board thought discharge was not merely an authorized sanction but the right sanction. But the language will not bear the interpretation that although the collective bargaining agreement does not authorize dismissal as a sanction the board decided to approve it anyway. Hill's argument again comes down to a quarrel with the board's interpretation of the agreement—a quarrel he must lose.

■ 3. The collective bargaining agreement can be read to require that the railroad's investigation must precede the worker's suspension, and also to entitle the suspended worker to an additional hearing, which Hill says he asked for and was refused. A worker who in the grievance proceedings growing out of his discharge is denied procedural rights granted him by the collective bargaining agreement can complain to the public law board, which must enforce those rights just as it must enforce any other rights conferred by the agreement. *Wilson v. Chicago & North Western Transport. Co.*, 728 F.2d 963, 966–67 (7th Cir.1984). Hill claims that the board refused to do this, but he muddies his argument by repeated references to "procedural due process," as if he were trying to raise an issue of constitutional law. We held in *Elmore v. Chicago & Illinois Midland Ry.*, 782 F.2d 94, 96–97 (7th Cir.1986), that for purposes of the Fifth Amendment a private railroad is not the United States, and therefore a denial by the railroad of due process of law is not a violation of the due process clause of that amendment. The district court relied on *Elmore* in turning down Hill's argument. Yet Hill did not cite it in his opening brief in this court, let alone argue that it either is distinguishable from this case or should be overruled. Nor did he cite it in his reply brief, even though the railroad's answering brief cited and relied on it.

The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless. *Bonds v. Coca-Cola Co.*, 806 F.2d 1324, 1328 (7th Cir.1986). But in fairness to Hill's counsel we note that several sentences in his opening brief, when read closely, reveal that he is not attempting to press a "constitutional" due process claim, but merely a "contractual" due process claim; in other words, he is merely complaining about a violation of the collective bargaining agreement's procedural provisions and not about a deprivation of his property (his job rights) without due process of law. His failure to make this clear by discussing the bearing of *Elmore* is, however, distressing, and at oral argument he appeared to conflate the two types of "due process" claim. After

argument he sent us a letter correcting this mistake, but he did not ask the court's permission to file what was in effect a post-argument brief, thus betraying a lack of familiarity with this court's rules and decisions. See *Palmer v. City of Chicago*, 806 F.2d 1316, 1324 (7th Cir.1986).

■ At all events Hill's claim to have been denied procedural protections guaranteed him by the collective bargaining agreement has been waived by not having been made to the public law board. It is true that the union (Hill's representative before the board) mentioned the alleged denial of his procedural rights in its statement of facts. But it did not argue the point or ask for any germane relief, such as a new investigative hearing, or reinstatement pending that hearing, or back pay until the final disposition of Hill's grievance. The facts being so cut and dried, the union no doubt realized that additional procedures would not change the outcome. At all events it put all its eggs in the basket labeled violation of Hill's substantive rights under the collective bargaining agreement.

■ 4. The agreement provides that "the Board shall make findings of fact and render an award on each case submitted to it, within thirty (30) days after the close of the hearing of each claim, with the exception of such case or cases as may be withdrawn from the Board by the mutual consent of the parties." The board took three and a half months to make its award. Hill contends that the award is therefore void, so that he should be entitled to resubmit his claim. We disagree. The agreement does not say that a late award lacks binding effect, as in *Huntington Alloys, Inc. v. United Steelworkers of America*, 623 F.2d 335 (4th Cir.1980). And there is no suggestion that Hill either was harmed by the two-month delay or complained after the deadline passed. Unless the agreement itself makes the deadline jurisdictional, a party's failure to complain about delay before the award is made forfeits his right to challenge the timeliness of the award. *Lodge No. 725 v. Mooney Aircraft, Inc.*, 410 F.2d 681, 683 (5th Cir.1969); *West Rock*

*Lodge No. 2120 v. Geometric Tool Co.*, 406 F.2d 284, 286 (2d Cir.1968); *In re Arbitration Between American Airlines, Inc. and Local 501*, 633 F.Supp. 723 (E.D.N.Y.1986). Hill's failure to object distinguishes *Jones v. St. Louis-San Francisco Ry.*, 728 F.2d 257, 264–67 (6th Cir.1984).

■ Hill's reliance on *Brotherhood of Railway & Steamship Clerks v. Norfolk Southern Ry.*, 143 F.2d 1015 (4th Cir.1944), is misplaced. The court there was interpreting another provision of the Railway Labor Act, not applicable to this case, which (as the court read it—whether rightly or wrongly we need not decide) made the arbitrators' authority to make an award lapse after the expiration of the deadline fixed in the collective bargaining agreement unless the period was extended by agreement of the parties prior to the making of the award, and no such agreement had been made. The provision in question, 45 U.S.C. § 158(i), applies to the ad hoc private arbitration authorized by 45 U.S.C. § 157 First rather than to arbitration by national or regional adjustment boards (see 45 U.S.C. § 153 First) or public law boards (see 45 U.S.C. § 153 Second). The Fourth Circuit's decision may therefore reflect some hostility to the idea of letting the members of an ad hoc tribunal flex their muscles by handing down awards after the deadline specified in the arbitration agreement has passed. All three types of tribunal authorized by the Railway Labor Act to make binding decisions—the national and regional adjustment boards, the special adjustment boards known as "public law boards" (so called after the "public law" that amended the Railway Labor Act to authorize them), and the ad hoc arbitrators authorized by section 157 First—are arbitration tribunals. But the methods of selecting the arbitrators and the procedures they follow differ somewhat among the types of tribunal, and only section 157 uses the word "arbitrator." The format contemplated by sections 157 and 158 comes closest to ordinary commercial arbitration and is not applicable to arbitration before the adjustment boards or the public law boards. See *Anderson v. National Rail-*

*road Passenger Corp.,* 754 F.2d 202, 205 n. 4 (7th Cir.1984) (per curiam).

An additional consideration is that the dispute in the Fourth Circuit's case concerned modification of the collective bargaining agreement, a highly sensitive question on which the timing of the answer might be important; the present case involves a routine disciplinary matter. At all events there is no statutory provision applicable to arbitration before the public law board corresponding to section 158(i), hence no peg on which to hang the Fourth Circuit's view if we have divined it correctly.

So the district court's judgment, refusing to disturb the arbitrators' decision, must be affirmed. But that cannot be the end of our consideration, for there is a matter of sanctions to be resolved. Hill's counsel wasted our time and his adversary's money unpardonably by misrepresenting the standard of federal judicial review of arbitration decisions. The appeal as a whole is not frivolous, because the complaint about the board's failure to render a timely award has at least colorable merit. But most of Hill's brief is devoted to frivolous argumentation. Rule 38 authorizes sanctions for the filing of a frivolous appeal (as does the less frequently cited 28 U.S.C. § 1912), and we have held that the rule authorizes the imposition of sanctions for the part of an appeal that is frivolous even if the presence of a colorable ground prevents the entire appeal from being adjudged frivolous. *District No. 8, International Ass'n of Machinists & Aerospace Workers v. Clearing,* 807 F.2d 618, 619, 623 (7th Cir.1986); see also *Granado v. Commissioner of Internal Revenue,* 792 F.2d 91, 94 (7th Cir.1986). It would be strange if by the happenstance of including one colorable (though losing) claim amidst an ocean of frivolous ones, a litigant could ward off all sanctions.

■■■■ It is true that in *Miller Brewing Co. v. Brewery Workers Local Union No. 9,* 739 F.2d 1159, 1168 (7th Cir.1984), we said that "as a general rule" it would not be worthwhile "to divide a suitor's claims (or defenses) into frivolous and nonfrivolous, and award attorney's fees in respect to the frivolous claims but not the others." We adhere to the general rule but recognize exceptions to it. In *Miller* the suitor (a company that had lost a labor arbitration and was trying to get the award set aside) actually prevailed in part, unlike the situation in the present case; moreover, only one of the company's arguments was even arguably frivolous. The appeal in this case was a complete loser, and most of the grounds of appeal were patently groundless. In addition, the suit in *Miller* preceded the effective date of the amended Rule 11 of the Federal Rules of Civil Procedure, which makes clear that adequate factual and legal investigation must precede every pleading in a federal district court action. It is true that this court has not incorporated Rule 11 into its own rules, and therefore the rule does not apply directly to proceedings in this court. It does however provide guidance in interpreting the rules that do control the proceedings in this court, such as Fed.R.App.P. 38 and 46, and 28 U.S.C. §§ 1912 and 1927. See *Thornton v. Wahl,* 787 F.2d 1151 (7th Cir.1986); *In re Kelly,* 808 F.2d 549 (7th Cir.1986).

■■■■ We conclude that sanctions should be imposed in this case under Rule 38 for the filing of an appeal based largely on frivolous grounds. The usual form of sanctions for filing a frivolous suit or appeal is an order to pay the litigation expenses of the winning party, and we see no reason to depart from that measure here. It is immaterial that the defendant did not request an award of sanctions. We frequently impose sanctions on our own initiative; for a recent example see *Weinstein v. University of Illinois,* 811 F.2d 1091, 1098 (7th Cir.1987). The appeal has "required members of this court and its staff to expend a good deal of time and attention which could have been used elsewhere. The United States pays the salaries of the judges of this court and its staff. In wasting their time, [Hill] also wasted the government's money." *United States v. Stillwell,* 810 F.2d 135, 136 (7th Cir.1987) (per curiam). Rather than attempt to estimate the cost to the government, our policy in these cases is to award the costs reason-

ably incurred by the winning party, in the hope that such awards will be sufficient to deter frivolous lawsuits.

We could stop here, and we do not suppose anyone would or could raise a question about the procedures used to determine that Rule 38 sanctions should be imposed in this case. The appeal is (in major part) frivolous, it has caused delay in a method of nonjudicial dispute resolution intended to avoid delay, and no more is necessary to demonstrate the propriety of an award of sanctions under Rule 38. We also do not suppose, however, that a railroad brakeman is responsible for frivolous legal arguments, so we are minded to order Hill's counsel to bear personally the expense incurred by the railroad in briefing the issues that we have found were frivolously raised by Hill's opening brief. We have on several occasions in recent years ordered counsel to bear personally the expense of sanctions under Rule 38. See *Westinghouse Electric Corp. v. NLRB*, 809 F.2d 419, 425 (7th Cir.1987); *Thornton v. Wahl, supra*, 787 F.2d at 1154; *Lepucki v. Van Wormer*, 765 F.2d 86, 88–89 (7th Cir. 1985) (per curiam); *Reid v. United States*, 715 F.2d 1148, 1155 (7th Cir.1983). We have not, however, discussed at any length our power to do so, and the appropriate procedures to be employed in doing so; and we desire now to repair this omission.

■ The imposition of Rule 38 sanctions directly on counsel could be thought the imposition of a disciplinary sanction under Rule 46(c), which provides for a hearing at counsel's request. (There is no counterpart provision in Rule 38 itself.) In incomplete response it could be noted that 28 U.S.C. § 1927, which provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct," and which says nothing about a hearing, is applicable to this case. The taking of a frivolous appeal from the confirmation of an arbitration award delays the finality of the arbitration proceeding and by doing so

thwarts the essential purpose of arbitration—to provide a swift and conclusive alternative to litigation. It is a separate question, however (one to which we shall return), whether this conduct is "vexatious" per se. In any event the Supreme Court has made clear—what is anyway obvious—that the requirements of due process of law are applicable to a proceeding to impose sanctions under this statute, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); and a number of decisions, building on *Piper*, say that notice and an opportunity to be heard are required before sanctions can be imposed on an attorney under section 1927. See, e.g., *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 570–71 (3d Cir.1985) (en banc).

■ Far from having any quarrel with these decisions, we believe absolutely that an attorney ordered to pay money as a sanction for the filing of a frivolous suit or appeal is entitled to due process of law, and that this entitlement includes an opportunity for a hearing if a factual question concerning the propriety of sanctions is raised. Such a question was raised in *In re Kelly, supra*, so we issued a rule to show cause and gave the attorney an opportunity for a hearing. In *Shrock v. Altru Nurses Registry*, 810 F.2d 658, 661–62 (7th Cir. 1987), we directed the district court to grant a hearing before imposing sanctions, because the adequacy of the factual investigation conducted by the plaintiff and his counsel before filing the complaint was in question.

■ But obviously the right to a hearing, whether that right is implicit or (as in Rule 46(c)) explicit, is limited to cases where a hearing would assist the court in its decision. Cf. *Lepucki v. Van Wormer, supra*, 765 F.2d at 87–88; *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983). Where, as in this and most Rule 38 cases, the conduct that is sought to be sanctioned consists of making objectively groundless legal arguments in briefs filed in this court, there are no issues that a hearing could illuminate. All the relevant "conduct" is laid out in the briefs themselves; neither

the mental state of the attorney nor any other factual issue is pertinent to the imposition of sanctions for such conduct. Where a hearing would be pointless it is not required, see *United States v. Nesglo, Inc.*, 744 F.2d 887 (1st Cir.1984); hence "if there are no contested factual issues the district judge can proceed summarily," *Centurion Reinsurance Co. v. Singer*, 810 F.2d 140, 143 (7th Cir.1987), as we are doing here. Cf. Fed.R.Crim.P. 42(a) ("A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court"); *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 782 n. 2 (7th Cir.1981). If the question were whether Hill's counsel had made arguments unsupported by the trial record (and if that record were not a part of the record before us), or had made frivolous legal arguments willfully, or maliciously, or with "conscious indifference" to their validity, or otherwise in bad faith, there would be a factual issue and he would be entitled to a hearing. See *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227–28 (7th Cir.1984). The standard for the imposition of sanctions under Rule 38 is an objective one, however; it has nothing to do with the mental state of the person sanctioned. See, e.g., *Bacon v. American Federation of State, County & Municipal Employees Council, #13*, 795 F.2d 33, 35 (7th Cir.1986). And it is under Rule 38 that we are proceeding in this case.

■■■ *Knorr* suggests that a finding of intentional misconduct is a prerequisite to imposing sanctions under section 1927. See 738 F.2d at 226–27. This reading is supported by the word "vexatiously" in section 1927, but is in tension with the Supreme Court's statement in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), that "the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him," and with our recent suggestion that "negligent inattention" is a sufficient predicate for imposing sanctions under section 1927, see *Westinghouse Elec-*

*tric Corp. v. NLRB, supra*, 809 F.2d at 425. *In re TCI Ltd.*, 769 F.2d 441, 445–46 (7th Cir.1985), interpreting *Knorr*, suggests that bad faith is relevant only if the suit is colorable; this parallels the distinction in tort law between abuse of process and malicious prosecution. See *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 470–71 (7th Cir.1982). At all events, proof of intentional or even negligent misconduct, while it would certainly provide an added reason for a sanction under Rule 38 or any other provision, is not a prerequisite to imposing sanctions under Rule 38. See, e.g., *Munson v. Friske*, 754 F.2d 683, 698 n. 10 (7th Cir.1985). That rule has no language corresponding to "vexatiously." And lest there be any doubt about the nature of our action, we emphasize that we are not accusing Hill's counsel of morally blameworthy conduct. We find merely that he made (we assume in perfect good faith) objectively groundless legal arguments for which a monetary sanction is proper in order to protect this court's ability to serve litigants with meritorious cases and in order to make lawyers give thoughtful consideration to whether there are grounds for an appeal before filing an appeal. This is not a new principle. The filing of an appeal should never be a conditioned reflex. "About half the practice of a decent lawyer consists in telling would-be clients that they are damned fools and should stop." 1 Jessup, Elihu Root 133 (1938).

■■ The text of Rule 38, and our previous decisions applying it, provide all the notice that an attorney could reasonably demand that sanctions may be imposed on counsel directly for the making of frivolous legal arguments in this court—and imposed without a hearing, if there are no factual questions. The cases we cited earlier in which this court has required the attorney to bear personally the sanctions imposed under Rule 38 did not give the attorney a hearing. Nor did *Hagerty v. Succession of Clement*, 749 F.2d 217 (5th Cir.1984), a similar case in another circuit. A hearing is required in a proceeding concerning sanctions only if there is a contested factu-

al issue; there is not and cannot be one in this case.

This court has been plagued by groundless lawsuits seeking to overturn arbitration awards, and again we remind the bar that whether the suit is brought by the company or the union or, as here, by an individual employee, if it is frivolous in whole or part this court will impose sanctions. See *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, supra,* 802 F.2d at 254-56. The promise of arbitration is spoiled if parties disappointed by its results can delay the conclusion of the proceeding by groundless litigation in the district court followed by groundless appeal to this court; we have said repeatedly that we would punish such tactics, and we mean it.

As should be evident to any regular reader of federal court decisions, the frequency with which federal judges are imposing sanctions for abuse of federal court process has increased markedly in recent years. The reasons are systemic. As the federal courts become more and more overloaded, the costs imposed on ethical and responsible litigants when judicial resources are diverted to the processing of frivolous claims and defenses mount higher and higher. Moreover, as the bar and the judiciary both expand, the incentive for self-regulation by lawyers that comes from appearing regularly before the same judges diminishes, making judicial regulation by sanctions increasingly necessary. We are in a transitional period, and some members of the bar still do not realize that the judicial attitude toward attorney misconduct has stiffened. They had better realize it.

The railroad shall submit to the clerk of this court within 15 days proper documentation of its expenses in defending this appeal against the claims that the public law board misinterpreted or misapplied the collective bargaining agreement. Mr. Hill's counsel will of course have an opportunity to contest the amount requested by the railroad.

AFFIRMED WITH SANCTIONS.

PARSONS, Senior District Judge, concurring in part and dissenting in part.

I assent to the majority opinion that under the narrow standard of review to be applied in these cases, the decision of the Public Law Board should not be set aside. The Board's construction of the word "conviction" is not so gross an apparent misinterpretation of the contract as to compel the conclusion that it was not interpreting the contract at all. However, I cannot agree with the majority that Hill's appeal was frivolous and that it was so " 'vexatious' per se" that it deserves a *sua sponte* award of sanctions against his attorney without notice to him and without affording him an opportunity to be heard. To this extent, I dissent.

The unmonitored act of assessing sanctions against a lawyer can too easily beget emotion. It is a common human tendency to find self assurance in anger when punishing, and that drive for self assurance itself tends to enhance the level of the punishment. In the performance of the judicial function, a court like any other person in authority too easily can lose sight of its otherwise dispassionate review of the facts and the law when it considers without a prior exchange of reasoning an assessment of sanctions. "A judge awarding sanctions is often advocating the correctness of his decision and is likely to do so convincingly.... [A court in an] opinion 'has the power to make an attorney's argument seem frivolous.' " Nelken, *Sanctions Under Rule 11—Some "Chilling" Problems in the Struggle Between Compensation and Punishment,* 74 Geo. L.J. 1313, 1339-40 & n. 172 (1986) (citation omitted); *see also Weinstein v. University of Illinois,* 811 F.2d at 1099 (7th Cir.1987) (Cudahy, J., dissenting from *sua sponte* award of sanctions). This tendency can become compelling when the court, in the absence of a request by a party and on its own motion, determines to assess sanctions.

In my view, neither the majority's analysis nor its citation of *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) establishes beyond sincere and reasonable debate that

Hill has been "convicted" within the meaning of the collective bargaining agreement. The bare majority of the Supreme Court in *Dickerson* construed the term "conviction" to mean under the circumstances of that case what it has been defined to mean here; but that was done for purposes particularly especial in *Dickerson* to the federal gun control laws, because "Congress sought to rule broadly—to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *Id.* at 112, 103 S.Ct. at 991 (*quoting Lewis v. United States,* 445 U.S. 55, 63, 100 S.Ct. 915, 920, 63 L.Ed.2d 198 (1980)). I think that the teaching of Justices Rehnquist, Brennan, Stevens and O'Connor in their dissent in *Dickerson* would have been acknowledged by the majority as reciting the universally recognized role of the incident of a "conviction" in the field of criminal law, and that the majority ruling in that case was a special exception.

The words of the dissent are compelling and ordered:

Thus, at the most, Congress has required the entry of a formal judgment as the signpost of a "conviction." At the least, Congress has required the *acceptance* of a plea.... The [majority] concludes that in this case "we ... have more [than a mere guilty plea]," because the state trial judge "noted" the plea and placed Kennison on probation. I cannot agree....

... Whatever a trial court does when it "notes" a plea, it is less, instead of more, than an acceptance of the plea which is preceded by an examination of the defendant to insure that the plea is voluntary.

Where the Iowa deferred judgment statute can be used, " '[t]he trial court may, *upon a plea of guilty [and] [w]ith the consent of the defendant* ... defer judgment and place the defendant on probation.' " Congress has never before considered such circumstances sufficient for a finding of a "conviction"; there is nothing in the Gun Control Act to infer that Congress has adopted such a standard now. It is likely that at the most

Congress intended that a "conviction" be represented by a formal entry of judgment, or at least an acceptance of a guilty plea. *But in either case, such criteria are absent where, following a guilty plea, the Iowa deferred judgment statute is invoked.*

460 U.S. at 123–24, 103 S.Ct. at 997 (Rehnquist, J., dissenting) (*quoting* Iowa Code sec. 789A.1 (1977)) (emphasis in original; emphasis added).

The majority in *Dickerson* observed that: the terms "convicted" or "conviction" do not have the same meaning in every federal statute. In some statutes those terms specifically are made to apply to one whose guilty plea has been accepted whether or not a final judgment has been entered. See, *e.g.,* 15 U.S.C. sections 80a–2(10) and 80(b)–2(6). In other federal statutes, however, the term "convicted" is clearly limited to persons against whom a formal judgment has been entered. See, *e.g.,* 18 U.S.C. section 4251(e) and 28 U.S.C. section 2901(f).

*Id.* at 112 n. 6, 103 S.Ct. at 991 n. 6. And even the majority in *Dickerson* implicitly acknowledged that it was departing from the usual definition of "conviction." It partially justified this by the particular concerns of Congress relating to federal gun control laws. *Id.* at 113 n. 7, 103 S.Ct. at 992 n. 7 (distinguishing *Lott v. United States,* 367 U.S. 421, 427, 81 S.Ct. 1563, 1567, 6 L.Ed.2d 940 (1961)).

An arbitrator is not necessarily confined in his definition of a term in a collective bargaining agreement to the definition given it by the Supreme Court or any other court. However, no authority gives him the power to define terms boundlessly, for if it did, then his power to interpret the collective bargaining agreement would know no limit. An arbitrator could implement the agreement with his own private notions of what is right and what is wrong by the simple guise of concluding that, as in this case, a plea of guilty means "conviction." It follows easily from decisions in this Circuit that if an arbitrator assigns a meaning to a term in the agreement that it cannot bear, then the arbitrator has failed

to interpret the agreement, and his interpretation is "wholly baseless and without reason." *See, e.g., Kotakis v. Elgin, Joliet & Eastern Railway Co.,* 520 F.2d 570, 574 (7th Cir.1975).

*Lott v. United States* provides the platform for Hill's making a non-frivolous argument here. In *Lott,* the Court held that because "[a]t any time before a sentence is imposed—*i.e.,* before the pronouncement of judgment—the plea may be withdrawn, with the consent of the court ... it is the judgment of the court—not the plea—that constitutes the 'determination of guilt'.... [W]e have not been cited to any case, and have found none, that holds or even intimates to the contrary." 367 U.S. at 426–27, 81 S.Ct. at 1567.

It is plain that under the Indiana statute that authorized what happened to Hill, he was not "convicted" within the meaning of *Lott.* Hill's lawyer justifiably could have believed that Indiana law should have been dispositive of this issue, and he asks us to look to the Indiana statute under which Hill's case was handled. Ind.Code 35–48–4–12 provides:

> Sec. 12. If a person who has no prior *conviction* of an offense under this article or under a law of another jurisdiction relating to controlled substances pleads guilty to possession of marijuana or hashish as a Class A misdemeanor, the court, without entering a *judgment of conviction* and with the consent of the person, may defer further proceedings and place him in the custody of the court under such conditions as the court determines. Upon violation of a condition of the custody, the court may enter a *judgment of conviction.* However, if the person fulfills the conditions of the custody, the court shall dismiss the charges against him. There may be only one (1) dismissal under this section with respect to a person.

(Emphasis added.) Hill's pleading guilty and being accepted into the custody of the court under this statute, as differing from being remanded into the custody of the executive branch, was not the equivalent of his being criminally punished, although it is not unusual for people on probation to consider themselves being punished. Courts authorize punishment; they do not administer it. Here, the essential characteristic of the probation was antithetical to punishment. Conceptually, probation here was a character-testing program to provide an opportunity to avoid punishment. A judgment of conviction was never entered in Hill's case. Eight days before the railroad's investigation was begun, the state's charges against Hill were dismissed, and his official record remained free of any conviction.

Hill's attorney summarized accurately the critical facts of this case in his argument before the court below as, in eloquent sincerity, he did in his final brief before us when he said:

> [Hills' former attorney] in advising his client ... told him that if he accepted the plea bargain as [proffered] he would not have a conviction on his record and that the charges against him would be, in due course, dismissed.... It is an outrage against our language to allow the word "conviction" to mean anything and everything that an arbitrator might ... choose to define it to mean.

> In this case, the word "conviction" has been extended to mean a plea bargain under the provisions of [Ind.Code sec.] 35–48–4–12.... [T]he Miami [Indiana] Circuit Court *specifically held,* in its entry of November 3, 1983, that it *"does not enter a judgment of conviction* but the Court shall defer further proceedings...."* This entry was then followed by a *dismissal of all charges* on January 19, 1984.

> *The contractual provision* which was used [by the railroad] to justify the discharge of Morton M. Hill *required that he be "convicted".... The undisputed evidence is that Mr. Hill was not convicted, but that ... the charges against him were dismissed.* The Public Law Board has no right or jurisdiction to ignore the law ... or the facts ... *in order to reach a result to its liking.* If a Public Law Board, or any other judicial entity, can redefine words having legal significance to mean something quite dif-

ferent from their customary fix then we lawyers, and all whom we advise, are set adrift. If the plain meaning of words can be *ignored under the guise of interpretation* then no contract agreement or understanding can ever be settled.... (Emphasis added.)

In view of this, the argument that the Board failed to interpret the contract is at least reasonable. I would find that the appeal of his case was not frivolous, was not an undue burden upon the appellee, and was not a waste of the court's time.

Finally, even were I to consider the appeal to have been frivolous, I would not impose sanctions without first having allowed Hill's attorney an opportunity to respond. The rules allowing sanctions should be strictly construed. *Hagerty v. Succession of Clement,* 749 F.2d 217, 222 (5th Cir.1984) (construing section 1927) (citing *Monk v. Roadway Express, Inc.,* 599 F.2d 1378, 1382 (5th Cir.1979), *aff'd in relevant part sub nom. Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Cf. *Liparota v. United States,* 471 U.S. 419, 426–27, 105 S.Ct. 2084, 2088–89, 85 L.Ed.2d 434 (1985); *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). The Supreme Court in *Roadway Express* did not limit the requirement of notice and opportunity to be heard to 28 U.S.C. sec. 1927. It stated broadly that *"[l]ike other sanctions,* attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Id.* at 767, 100 S.Ct. at 2464 (emphasis added). The context in which this statement was made concerned a court's inherent power to assess sanctions against attorneys who deliberately abuse judicial processes. *Id.* at 766, 100 S.Ct. at 2464. The right to notice and an opportunity to be heard before sanctions are assessed, recognized in *Roadway Express,* was neither limited to section 1927 nor implicitly qualified. It applies to 28 U.S.C. sections 1912 and 1927, Fed.R.App.P. 38 and 46(c), and Fed.R.Civ.P. 11.

Fed.R.App.P. 38 and 28 U.S.C. sec. 1912 both concern frivolous appeals and speak of the taxing of damages for delay. It is true that the ultimate determination of whether or not an appeal is frivolous or there has been undue delay rests with the court itself, but I think it is injudicious to make this factual determination without first allowing the attorney an opportunity to explain why in his or her view the appeal was not frivolous or the delay was not undue. No one on the bench is infallible. Without first permitting an opportunity to be heard, an assessed sanction necessarily appears to be based on caprice or emotion, and not on a monitored exercise of judicial discretion. The *sua sponte* assessment of sanctions "is bound to be a capricious business...." *Weinstein,* at 1099 (Cudahy, J. dissenting).

Of the other two provisions empowering an appellate court to award sanctions, Fed. R.App.P. 46(c) explicitly calls for notice and an opportunity to respond, and 28 U.S.C. sec. 1927 implicitly presupposes it. And the legislative history of the 1980 amendments to section 1927, which enlarged its original reach to permit a court to impose sanctions directly on the attorney himself, makes clear that notice and an opportunity to respond are required:

The *high standard* which must be met to trigger 1927 insures that the provision in no way will dampen the legitimate zeal of an attorney in representing his client.... The purpose in deterring delay would be more effectively achieved if judges warn attorneys in anticipation of a violation of section 1927 rather than simply waiting for violations to occur and imposing the sanctions provided. However, the managers decided not to require a warning as a matter of law because a violation might not necessarily be committed in the presence of the judge and because such a requirement might be viewed as license to engage in dilatory conduct until such warning is given....

The managers intend that judges applying section 1927 will safeguard the rights of an attorney who may be held in violation of the section. *Before sanctioning an attorney under section 1927, the court is to afford the attorney all*

*appropriate protections of due process available under the law.*

House Conf.Rep. No. 96–1234, 96th Cong., 2nd Sess. 8, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2716, 2782–83 (emphasis added).

Finally, it is established in the cases of this Circuit that a court may decline to award sanctions where it is assured that the misconduct at issue will not be repeated. *See, e.g., In re Kelly,* 808 F.2d 549, 552 (7th Cir.1986). If a declination to impose sanctions may be premised on such an assurance (a factual issue), similar considerations ought to be available to every attorney or litigant on whom an imposition of sanctions is at issue.

Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 260, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 (1975). The consistent body of cases from the Supreme Court and the circuits that have spoken on this matter underscores the principle that sanctions should not be awarded *sua sponte* with neither notice nor an opportunity to be heard. *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 227 (7th Cir. 1984) ("[A] court should provide counsel with some opportunity to be heard."); *see also Lepucki v. Van Wormer,* 765 F.2d 86, 88 (7th Cir.1985) (per curiam) (attorney who had notice that sanctions under Rule 11 might be assessed, but who nevertheless failed to appear at the sanctions hearing, was not entitled to additional process); *Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 570 (3rd Cir.1985) (en banc) ("Courts of appeals may not impose disciplinary sanctions on attorneys until 'after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested.' ") (citations omitted); *Hagerty,* 749 F.2d at 223 (since appellees moved for sanctions on appeal, the assumption is that appellant, having notice of the motion, was permitted to respond before it was allowed; even then, it was remanded to the district court for a determination of amount); *Federal Trade Commission v. Alaska Land Leasing, Inc.,* 799 F.2d 507, 510 (9th Cir. 1986) ("Due process requires that parties subject to sanctions have 'sufficient opportunity to demonstrate that their conduct was not undertaken recklessly or willfully.' ") (*quoting Toombs v. Leone,* 777 F.2d 465, 472 (9th Cir.1985)); *Miranda v. Southern Pacific Transportation Co.,* 710 F.2d 516, 522 (9th Cir.1983); *United States v. Blodgett,* 709 F.2d 608, 610 (9th Cir.1983) (district court's award of sanctions under section 1927 against an attorney for filing a frivolous interlocutory appeal reversed because the attorney had not been given an opportunity to be heard); *Charczuk v. Commissioner of Internal Revenue,* 771 F.2d 471, 476 & n. 4 (10th Cir.1985) (due process requires court to afford "all appropriate protections of due process" to attorney whose conduct was "paradigm of unreasonable behavior") (*quoting* House Conf.Rep. No. 96–1234, *supra,* at 2783).

Rule 38 and section 1927, like other publicly-announced penalties for misconduct, provide general notice that sanctions can be assessed for infractions of rules including our rules against frivolous arguments made by counsel. But there is to be drawn a distinction between the general notice about sanctions and notice that sanctions are being considered. Traditional procedural steps should always be taken before an assessment of a penalty is made.

And even if the approach to sanctions being followed were permissible, it is, I believe, ill-advised.

> Strong judicial management is a potential threat to the adversary system as it has existed for hundreds of years because it calls for a significant change in the power relationship between judges and lawyers and in their respective functions. Indeed, there are risks in imposing a meaningful duty on attorneys to act in the interests of the judicial system, rather than exclusively in that of their clients, and in placing enforcement of that duty in the hands of judges, whose primary concern could well become efficiency rather than justice itself.

Miller, *The Adversary System: Dinosaur or Phoenix?*, 69 Minn.L.Rev. 1, 34–35 (1984). The better policy in all such determinations is to not predispose the issue by concluding that a hearing would not be helpful. The need to deter frivolous litigation should never be considered demanding enough to cause us judges to weaken those structures of fundamental fairness upon which our judicial system rests.