the first instance to another Article I officer, a magistrate.

This conclusion may seem inconsistent, at first blush, with the fact that the BAFJA does in fact provide for review in some instances by bankruptcy appellate panels, which are composed of bankruptcy judges who, like magistrates, are Article I officers. We find, however, that providing for review by a panel of bankruptcy judges and not by magistrates is logically supportable within the framework of the BAFJA. Congress had provided for bankruptcy appellate panels under the BRA. While Congress continued the use of such panels under the BAFJA, the 1984 act strengthened the courts' control over them. Under the BRA, appeals from bankruptcy judges went to a panel of three bankruptcy judges if the circuit council of a circuit ordered the creation of such panels under former section 160 of 28 U.S.C. Pursuant to former section 1334(a) of 28 U.S.C., appeals were heard by district courts *only* if such appellate panels were not created.[7] By contrast, in order for bankruptcy appellate panels to hear appeals under the BAFJA, not only must the circuit council establish the panels, but the district courts must agree to permit referrals, and the parties must consent. Thus, while Congress has provided specifically for appeal to an Article I body, it has placed a number of obstacles in the way of such appeals, obstacles which seem aimed in part at increasing the control of the circuit courts and the district courts over bankruptcy appellate panels. There is also the obvious point that a panel of bankruptcy judges presumably has an expertise that a magistrate would not generally share. On the other hand, appeal to the district court, a tribunal not necessarily fortified by special expertise, involves the alternative ingredient of review by an Article III judge. Thus, we do not find it anomalous that Congress would provide for appeals to this Article I body and, at the same time, not permit appeals to magistrates.

7. Appeals could also go directly to courts of appeals under former section 1293(b) of 28

### III.

Since we conclude that the district court did not have the authority to refer the appeal from the bankruptcy court to a magistrate, we vacate the order entered below and remand for consideration of this appeal by the district court itself.

**VACATED AND REMANDED.**

**CENTURION REINSURANCE COMPANY, LIMITED, Plaintiff-Counterdefendant-Appellee,**

v.

**Howard S. SINGER and L. Steven Medgyesy, Defendants-Counterplaintiffs-Appellants.**

**No. 86–1979.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1986.

Decided Jan. 23, 1987.

U.S.C. if the parties consented.

**142**

Arthur Don, D'Ancona & Pflaum, Chicago, Ill., for defendants-counterplaintiffs-appellants.

Patrick J. Phillips, Jenner & Block, Chicago, Ill., for plaintiff-counterdefendant-appellee.

Before BAUER, Chief Judge, and WOOD and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This appeal from an order dissolving a preliminary injunction requires us to untangle a confused procedural skein in order to determine the proper equity procedure to follow in an unusual factual and procedural setting—which we shall ruthlessly simplify to make this opinion intelligible.

Centurion Reinsurance Company was formed in 1979 as a Cayman Islands corporation to engage in the reinsurance business. It had and has two shareholders—Charles Hiatt, the majority shareholder and chief executive officer of the company, and Howard Singer. Hiatt and Singer contributed the capital for the company in the form of promissory notes backed by a letter of credit furnished by Singer. Singer signed a consulting agreement with the company under which he was to receive an annual compensation, not exceeding $25,000, of three percent of Centurion's "gross net written premiums."

In August 1981, fearing that Hiatt was diverting Centurion's premium income to his personal use, Singer caused $200,000 of that income, which had been deposited in Centurion's Cayman Islands bank account, to be transferred to an account controlled by Singer in a bank in Chicago. Early in 1982 Centurion brought this suit against Singer, under the diversity jurisdiction, seeking to recover the money in the account; Centurion alleged that Singer had converted this money. Centurion moved for and obtained a preliminary injunction forbidding Singer to remove the money from the account pending decision on the merits of Centurion's suit.

Singer had counterclaimed, claiming breach of the consulting agreement and of certain oral arrangements, and also federal securities fraud and common law fraud. And he had impleaded Hiatt, claiming that Hiatt had violated his fiduciary obligations, as majority shareholder and chief executive officer, to both Singer and Centurion—for the counterclaim contained derivative claims against Hiatt on behalf of Centurion as well as Singer's personal claims against him. Singer tried to depose Hiatt but was

met by a psychiatrist's letter which said that Hiatt was too deranged to testify truthfully. (Yet Hiatt remains in control of Centurion.) Meanwhile, an insurance company whose policies Centurion had reinsured was suing Centurion in arbitration, seeking $1.1 million in damages; this proceeding is still going on. Apparently, in the four years since the alleged conversion, all of Centurion's assets other than the promissory notes and the money frozen in the bank account in Chicago have evaporated.

In April 1986, after abortive settlement negotiations, Centurion asked the district judge to dissolve the preliminary injunction (now four years old) and order the money in the account (grown through compounding of interest to almost $300,000) paid over to Centurion. Without conducting an evidentiary hearing the judge dissolved the injunction and ordered the money turned over to Centurion, on the ground that the money was Centurion's. Singer appeals.

■ Orders dissolving preliminary injunctions, like orders granting, denying, and modifying such injunctions, are expressly made appealable by 28 U.S.C. § 1292(a)(1) regardless of finality. Although we cannot find a case discussing the standard of appellate review of an order dissolving a preliminary injunction, we can think of no reason why it would be different from the standard applicable to the more common case of an order granting or denying such an injunction, and we hold that the standards are the same. The standard is whether the district court abused its discretion—which means, committed an error of law or a clear error of fact or struck an unreasonable (not merely erroneous) balance among the considerations that a district judge is required to weigh in deciding whether to grant preliminary equitable relief. *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1437 (7th Cir.1986). In striking that balance in a dissolution case the district judge must answer the following question: Is the irreparable harm to the plaintiff if the injunction is dissolved, weighted by the probability

that dissolution would be a mistake because the plaintiff will go on to win at trial, greater or less than the irreparable harm to the defendant if the injunction is not dissolved, weighted by the probability that allowing the injunction to continue in force would be a mistake because the defendant, not the plaintiff, will win at trial? In other words, is the expected cost of dissolving the injunction—considering the probability that dissolution would be erroneous because the plaintiff really is entitled to injunctive relief, and the consequences of such an error—greater or less than the expected cost of not dissolving the injunction? If greater, the injunction should not be dissolved; if less, it should be. *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593–94 (7th Cir.1986). We agree with Singer that the district judge did not go through all these steps in this case, but in the peculiar circumstances of this case he didn't have to.

■ To begin with, the preliminary injunction had been obtained by Centurion, to prevent Singer from dissipating funds that belonged to Centurion and had been converted by Singer, who now admits that he had no authority to transfer money from Centurion's bank account. The injunction did not run in favor of Singer and he had no equity in resisting its dissolution. Nor could he be harmed by it.

■ What troubles Singer is not the dissolution of an injunction that had tied his hands but the accompanying order that the bank retransfer the money to Centurion. The district judge's reasoning was simple but persuasive. The money is Centurion's property; Singer converted it. If Singer had grounds for contesting Centurion's right to the property, then he was entitled to a trial, as in any suit for conversion that involves contested factual issues. But if there are no contested factual issues the district judge can proceed summarily. See Fed.R.Civ.P. 56; *SEC v. Frank*, 388 F.2d 486, 490 (2d Cir.1968) (Friendly, J.). Singer admits that the money is Centurion's. If A sues B for a watch in B's possession, and B admits that it is A's watch and A is entitled

to its immediate possession, the judge can order B to give A the watch without the formality of an evidentiary hearing; by definition, the only purpose of such a hearing would be to resolve a factual dispute. The present case is a little more complicated because Singer argues that Centurion, the counterpart to A in our example, will not get the "watch"; Hiatt will steal it, as he has stolen or otherwise dissipated (so Singer claims, with some show of reason) Centurion's other assets. But this argument, even if accepted, does not qualify Centurion's right to the $300,000. It would support a receivership or conservatorship of some sort to protect Centurion from Hiatt, but Singer has never sought such relief. He cannot just appoint himself Centurion's receiver, as in effect he did by converting its principal (and now virtually its only) asset.

■ But if the judge's order were purely and simply an order resolving on the merits Centurion's action for conversion, its status as an injunction would be in considerable doubt, and we might not have jurisdiction over Singer's appeal. An order of replevin, like an ordinary money judgment, is a legal rather than an equitable remedy, and it is therefore appealable only if final. See *United States v. Hansen*, 795 F.2d 35, 39 (7th Cir.1986), and cases cited there. The order in this case is not final, because no final judgment terminating the lawsuit has been entered; even if the judge's order is treated as having disposed of all the issues raised by the complaint, the counterclaim remains pending before him.

■ But there is more to the order than that. Singer objects to it on the ground that he will suffer irreparable harm if he loses control of the money in the account. He fears as we have said that Hiatt will dissipate that money just as (Singer contends) he has dissipated the rest of Centurion's assets. Thus the judge's order in effect denied a motion for a preliminary injunction by Singer, a motion seeking to restrain Centurion's management, which is to say Hiatt, from exercising control over Centurion's property pending resolution of the litigation. And such an order is appealable under section 1292(a)(1).

■ *Uehlein v. Jackson Nat'l Life Ins. Co.*, 794 F.2d 300, 302–03 (7th Cir.1986), is not to the contrary, though it also dealt with an order governing control of the stakes in a case pending decision, and held the order nonappealable. The case involved a dispute over insurance proceeds. The insurers deposited them in court with a request that the judge decide who should get them. Before the dispute was resolved, one of the claimants, Mrs. Mueller, claiming to be in desperate need of liquid assets, asked the judge to turn over the insurance proceeds to her right away. He refused, she tried to appeal, and we held (so far as is pertinent to this case) that the refusal was not the denial of an injunction and therefore could not be appealed under section 1292(a)(1). What Mrs. Mueller was asking for was not what is conventionally understood as an injunction. An order to pay, as we have said, is not an injunction, yet what she wanted was an advance payment on the money judgment that she hoped to obtain at the conclusion of the litigation. We had to decide whether the judge's ruling, though it was not a ruling on a request for an injunction as such, had enough of the practical consequences of denying an injunction to be appealable as such a denial, or whether it belonged rather to the large class of procedural and administrative orders that, though they may literally be orders to do something and may have serious and even irrevocable consequences for one of the parties (as a massive discovery order might), are not appealable as injunctions. This question was easily answered; all other considerations to one side, there was no threat of irreparable harm (a prerequisite for injunctive relief) in any sense that the law recognizes, for there could be no doubt that the money would be there waiting for Mrs. Mueller if and when she won her suit. See also *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Industries, Inc.*, 789 F.2d 21, 25 (D.C.Cir.1986). It is true that money now is worth more than money later and

that, depending on a party's circumstances, the interest (if any) to which he will be entitled if he wins may not compensate him fully for the delay. But the law has never recognized that consequence as being an irreparable harm justifying the issuance of an injunction.

 This case is different. Singer wants an order preventing Centurion from making any withdrawals of its money. It is much as if he were asking for an injunction against Centurion's selling a building that it owned. The bank account is as much Centurion's asset as its physical property would be, if it had any property. It is true that if Singer had tried to attach the bank account, an order granting or denying his request would not be appealable under section 1292(a)(1), see *Rosenfeldt v. Comprehensive Accounting Service Corp.*, 514 F.2d 607, 609 (7th Cir.1975); nor would an order either appointing or refusing to appoint a receiver—such orders are appealable immediately, but under 1292(a)(2), not (a)(1). See *West v. Zurhorst*, 425 F.2d 919, 920 (2d Cir.1970) (Friendly, J.). Not every order affecting the stakes in a case is within the scope of 1292(a)(1). But an order granting or denying an injunction, if it has all the usual characteristics of such an order, is not rendered nonappealable by the fact that it affects control of the stakes, as many preliminary injunctions do. Moreover, even if an injunction against Centurion would be so like an attachment that it would have to be treated the same way for purposes of appealability, the injunction that Singer sought was not really against Centurion but against Hiatt. Singer is a major stakeholder in Centurion and his counterclaim is in part a derivative suit on Centurion's behalf. His quarrel is with Hiatt. He wants to make sure that Hiatt doesn't get his hands on Centurion's assets. An injunction designed to prevent Hiatt from doing that would not be anything like an order of attachment.

 Having unsnarled as best we can the jurisdictional lines and recharacterized the appeal as being an appeal from an order denying a preliminary injunction to prevent Hiatt from getting his hands on Centurion's money in the bank account controlled by Singer, we must decide whether the district court abused its discretion in denying the request. It did not, if Singer has no reasonable chance of obtaining a judgment at trial against Centurion. (And it would have to be a judgment on his counterclaim against Centurion; he has no chance of prevailing on his defense to Centurion's claim for conversion, for he has no defense.) No matter how strongly the balance of irreparable harms may incline in favor of the party asking for a preliminary injunction, it is error to grant the injunction if the party has no chance or only a very slight chance of prevailing on the merits. "It is not enough that the failure to get the injunction will be a disaster for him whereas the injunction would be only a minor inconvenience to the defendant. Equity jurisdiction exists only to remedy legal wrongs; without some showing of a probable right there is no basis for invoking it." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir.1984).

 Singer flunks this undemanding test. The only claim in his counterclaim against Centurion that he stresses is for breach of the consulting agreement; but the evidence is that Singer was paid more than three percent of Centurion's total "net gross written premiums," so this claim seems doomed. Maybe, though, as Centurion argues, the evidence is not undisputed; but to get preliminary relief the movant must show more than a slight probability of success, and this Singer has failed to do. Moreover, it is not at all clear that if Singer did have a good claim against Centurion, this would justify an order preventing Centurion from recapturing control of its asset. You cannot steal someone's property and then defend against his suit for replevin by arguing that you would like to hold on to it as a possible set-off for other claims you have against him. *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1293 (7th Cir.1985). But this is not an issue we need worry further, since Singer has not

shown that he has a good claim against Centurion. And while he may have a good claim against Hiatt, he cannot look to Centurion's assets to satisfy his personal claims against Hiatt, especially since two of those claims are derivative claims on behalf of Centurion!

As a shareholder in Centurion, Singer has an interest in the preservation of Centurion's assets. But that interest is not engaged by his counterclaim. If he believes that Hiatt is mismanaging Centurion and will dissipate the money in the Chicago bank, he can seek the appointment of a receiver for the corporation—which, as we have said, he hasn't done. Since Singer has no hope of prevailing on the merits against Centurion, he has no equity in seeking a preliminary injunction designed to preserve Centurion's assets in case he does win.

A further air of unreality is lent Singer's claims and this appeal by his counsel's acknowledgment at argument that, as Centurion argues (but the district judge found unnecessary to decide), Centurion really needs the money in the Chicago bank to defend itself in the arbitration proceeding. Should it lose that proceeding and be forced to pay large damages, the plaintiff in that proceeding will attach the letter of credit that secures Singer's and Hyatt's promissory notes to Centurion, and Singer will have to compensate the issuer of the letter of credit. It seems that Singer has as much to lose as Hiatt by winning this appeal—which makes us think that by trying to tie up Centurion's only assets in apparent conflict with his own self-interest Singer must be pursuing some complex gaming strategy. The courts of this circuit are not required to furnish the playing board.

At argument Centurion's counsel made clear that he had no objection to the entry of a preliminary injunction requiring him to account for the use made of the $300,000—to make sure it doesn't go the way of Centurion's other assets. We shall hold him to this generous concession, and we therefore affirm the district court's order subject to the court's entering such an injunction on remand.

So Ordered.