974 F.2d 834
 1992 Copr.L.Dec. P 26,980, 24 U.S.P.Q.2d 1145
 qad. inc., a California Corporation, and Pamela Lopker and
Karl Lopker, individuals, Plaintiffs-Appellants,
v.
ALN ASSOCIATES, INC., an Indiana Corporation, and Sally
Allen, Mike Allen and Ronald Whiteford,
individuals, Defendants-Appellees.
 Nos. 91-2588, 91-2907.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 16, 1992.
Decided Sept. 3, 1992.
As Amended Sept. 11, 1992.
 
 Ernie L. Brooks, argued, Thomas A. Lewry, Kevin J. Heinl, Brooks & Kushman, Southfield, Mich., Jami E. Bay, Bay & Associates, Chicago, Ill., for plaintiffs-appellants.
 John B. Ford, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, Ind., Robert E. Wagner, Alan L. Barry, argued, Michael D. Lake, Joseph A. Fuchs, Wallenstein, Wagner & Hattis, Jerry A. Riedinger, Allegretti & Witcoff, Chicago, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, FLAUM, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.
 FLAUM, Circuit Judge.
 
 
 1
 qad. inc. and its principals, Pam Lopker and Karl Lopker (collectively "qad"), filed suit against ALN Associates, Inc. and its principals, Sally Allen, Mike Allen, and Ronald Whiteford (collectively "ALN"), for breach of contract, misrepresentation, unfair competition, misappropriation of trade secrets, and copyright infringement. qad alleged, among other things, that ALN had infringed qad's copyright in a computer software program. The district court granted qad a preliminary injunction that prohibited ALN from further infringing qad's copyright, but later dissolved the injunction in the course of granting ALN's motion for summary judgment on the copyright infringement count. We affirm the district court's decision to dissolve the injunction.
 
 I.
 
 2
 Article I, section 8, clause 8 of the United States Constitution provides the basis for our system of copyright and patent protection, and grants Congress the authority to:
 
 
 3
 promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.
 
 
 4
 Congress extended copyright protection to "literary works" in 17 U.S.C. § 102(a)(1), a category which includes computer programs. See, e.g., Whelan Assoc., Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1234 (3d Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987).
 
 
 5
 The sort of software at issue in this case, manufacturing systems software, is designed to assist manufacturers control inventory, process orders, and maintain financial records, and is typically comprised of hundreds of individual programs which are grouped and sold as modules. For years, qad marketed and distributed such a software module that was owned by Hewlett-Packard Corporation (HP) and sold under the tradename HP250. Because HP250 was written in the HP-Basic computer language, it could only be used on HP small business computers (HPs). In 1986, qad introduced its own manufacturing systems software program, which it sold under the tradename MFG/PRO. qad wrote MFG/PRO in PROGRESS, a more versatile computer language than HP-Basic, which allowed the program to run on computers other than HPs. A few years later, ALN, which had become an MFG/PRO distributor, decided that it, too, would introduce a manufacturing systems software package, selling it under the tradename MFG+. After MFG+ hit the market, qad filed this suit against ALN for copyright infringement and for a variety of other claims. ALN counterclaimed with charges of copyright infringement and unfair competition.
 
 
 6
 qad later sought a preliminary injunction to halt ALN from further infringing its copyright in MFG/PRO. During the course of a four-day injunction hearing, the district court heard testimony from qad's president Pam Lopker, ALN's chief programmer Sally Allen, expert witness Richard Rubenstein, and former ALN employees, all of whom provided direct or indirect evidence that ALN had copied portions of MFG/PRO in developing MFG+. Accordingly, the court granted an injunction, restraining ALN from further violations of qad's copyright, and ordering ALN to turn over all copies of MFG/PRO software and manuals in its possession.
 
 
 7
 In December 1990, ALN moved for summary judgment on qad's copyright infringement count. First, ALN raised the equitable defense of unclean hands, arguing that the copyright infringement count should be dismissed because qad had failed to state on its registration form with the copyright office that MFG/PRO was in fact a derivative work of HP250. Second, ALN raised the equitable defense of copyright misuse--which has its historical roots in the unclean hands defense and is a complete bar to enforcement of one's copyright, see, e.g., F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago, 214 U.S.P.Q.2d 409, 413 n. 9 (7th Cir.1982); accord Lasercomb America, Inc. v. Reynolds, 911 F.2d 970, 974-75 (4th Cir.1990); cf. Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 492, 62 S.Ct. 402, 405, 86 L.Ed. 363 (1942) (applying an equitable misuse defense in a patent case)--asserting that qad, by filing this suit, had exploited its copyright in MFG/PRO to gain control over material (i.e., HP250) for which it held no valid copyright.
 
 
 8
 The district court granted ALN's motion for summary judgment, and dismissed qad's entire copyright infringement count; in conjunction with that decision, the court also concluded that qad had obtained the preliminary injunction through misrepresentations at the injunction hearing, and therefore exercised its equitable power to dissolve the injunction against ALN. qad., inc. v. ALN Assoc., Inc., 770 F.Supp. 1261, 1270-71 (N.D.Ill.1991).[1] This appeal followed.
 
 II.
 
 9
 A threshold question arises over the scope of our appellate jurisdiction. qad filed this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1), which permits it to immediately appeal the district court's decision to dissolve the preliminary injunction. The summary judgment ruling on the copyright infringement count, in contrast, was not appealable as a final judgment, for the court retained jurisdiction over the remaining counts.[2] Nor does qad contend that the court entered a partial final judgment on this count pursuant to Fed.R.Civ.P. 54(b). Rather, owing to the close relationship between the decision to dissolve the preliminary injunction, and the decision to grant summary judgment, qad urges us to exercise our pendent appellate jurisdiction to review the court's summary judgment ruling at this juncture.
 
 
 10
 "We can review an unappealable order only if it so entwined with an appealable one that separate consideration would involve sheer duplication of effort by the parties and this court. Any laxer approach would allow the doctrine of pendent appellate jurisdiction to swallow up the final-judgment rule." Patterson v. Portch, 853 F.2d 1399, 1403 (7th Cir.1988); see also Asset Allocation and Management Co. v. Western Employers Ins. Co., 892 F.2d 566, 569 (7th Cir.1989); 11 Charles A. Wright, Arthur R. Miller, & Frank W. Elliott, Federal Practice and Procedure: Civil 2d § 2962, at 216-217 (Supp.1992). Put another way, because an interlocutory appeal under § 1292(a)(1) is "an exception to an otherwise fundamental rule of federal appellate jurisdiction, its scope should be construed with great care and circumspection." Shaffer v. Globe Protection, Inc., 721 F.2d 1121, 1124 (7th Cir.1983) (emphasis in original); accord General Motors Corp. v. Gibson Chem. & Oil Corp., 786 F.2d 105, 108-09 (2d Cir.1986); Kershner v. Mazurkiewicz, 670 F.2d 440, 447 (3d Cir.1982).
 
 
 11
 Here, the district court made two separate, but related rulings. In the first, it dismissed qad's entire copyright infringement count because no genuine issue of material fact remained as to ALN's affirmative defense of copyright misuse. That decision was based on the court's finding that qad had attempted, by filing this lawsuit, to extend its copyright in MFG/PRO over software which it did not own (i.e., HP250). In making this ruling, the court engaged in a lengthy analysis of the copyright misuse defense. In the second ruling, the court dissolved the preliminary injunction in light of its conclusion that qad made specific misrepresentations during the course of the preliminary injunction hearing: "qad's deception has misled this Court into imposing an unwarranted harm on ALN--and with the truth now having emerged, it is time to correct that grievous wrong." qad., inc., 770 F.Supp. at 1270-71. In so ruling, the court relied on the legal maxim that a court sitting in equity must withdraw relief when its aid has been wrongfully enlisted. Although there may be an overlap in the evidence supporting these two rulings, that fact alone is an insufficient basis for exercising our pendent jurisdiction if there is an independent basis on which to review the interlocutory appeal alone. Patterson, 853 F.2d at 1403. Because these two rulings are not so entwined that separate consideration would involve sheer duplication of effort, we lack jurisdiction over the court's grant of summary judgment on the copyright count.
 
 III.
 
 12
 We review the district court's decision to dissolve qad's preliminary injunction under the highly deferential abuse of discretion standard. Centurion Reinsurance Co., Ltd. v. Singer, 810 F.2d 140, 143 (7th Cir.1987); A.J. Canfield Co. v. Vess Beverages, Inc., 796 F.2d 903, 906 (7th Cir.1986). In doing so, we review the court's factual determinations for clear error and its legal conclusions de novo. Centurion Reinsurance, 810 F.2d at 143.
 
 
 13
 Regarding the legal basis for dissolving the injunction, the court concluded that it would be inequitable to let the injunction stand given qad's misrepresentations at the injunction hearing:
 
 
 14
 qad's present arguments reveal that its presentation at the [Injunction] Hearing was grounded in knowing falsehood.... It necessarily follows from the analysis in this opinion that ALN was 'wrongfully enjoined or restrained' ... by the order.
 
 
 15
 qad, 770 F.Supp. at 1270-71. The court was undoubtedly on solid legal ground in dissolving the injunction if, indeed, qad procured it by misrepresentation. See Pidding v. How, 8 Simons 477, 480 (V.C.1837) ("It is a clear rule, laid down by courts of equity, not to extend their protection to persons whose case is not founded in truth."); see also Coastal Corp. v. Texas Eastern Corp., 869 F.2d 817, 818 (5th Cir.1989) (injunction procured by material misrepresentations may not be sustained). The only issue, therefore, is whether the court's factual findings of misrepresentation were clearly erroneous.
 
 
 16
 The court found that qad--through Pam Lopker, Rubenstein, and qad's counsel--emphatically asserted at the injunction hearing that MFG/PRO was wholly original. For example, Pam Lopker testified that MFG/PRO was "original work" and that qad had written "every line of code from scratch." Tr. at 24. The district court pointed to the following exchange that took place on cross-examination of Lopker:Q. And you did in fact modify some of the Hewlett-Packard programs that you put into MFG/PRO?
 
 
 17
 A. No, that's incorrect.
 
 
 18
 Q. Then why are they new.
 
 
 19
 A. When we started with MFG/PRO we started with everything new. We started with new database design. If you look at our database on MFG/PRO it is nowhere similar to the database and final concepts in [HP250].
 
 
 20
 Tr. 47-48 (emphasis added). The court found that more recent evidence, including the testimony of expert witness Richard Suslick, revealed that MFG/PRO was not, as claimed, "wholly original" software, but was "unmistakably" a derivative of HP250. qad., inc., 770 F.Supp. at 1264.[3] The court explained that it had relied on Pam Lopker's representations in granting the injunction, and that, in retrospect, she had unquestionably been less-than-candid in discussing MFG/PRO's originality.
 
 
 21
 Moreover, the district court concluded it was misleading for qad to remain silent throughout Rubenstein's testimony--which focused on similarities between MFG/PRO and MFG+--knowing full well that MFG/PRO and HP250 shared many of these same similarities. Rubenstein's central message at the injunction hearing was that although MFG/PRO and MFG+ were "somewhat different stylistically," they carried the same "basic structure" and many similar "file names." Tr. at 652. He explained, for example, that both MFG/PRO and MFG+ contained a set of files names that carried the prefix "cm__" (referred to as "cm underscore"), and that it was highly unlikely that two writers would independently come up with that file name. Tr. at 303. The district court dissolved the injunction in part based on new evidence proving that "cm__" had in fact originally appeared (hundreds of times) in HP250, and been copied by qad in writing MFG/PRO. In the court's view, it was misleading for qad to remain silent through Rubenstein's testimony. Making matters worse, qad's counsel emphasized the import of Rubenstein's testimony in closing argument at the hearing: "So what we have here is a program that was designed by qad [and] copied by ALN.... [T]here have been a lot of cosmetic changes, but you may rewrite all the programs, but they all had to fit in. And that's why the name files and the field files are so important, when the expert witness looks at code and finds up to 50% of the names in certain programs." Tr. at 722-23. According to the court, qad, through representations such as this, had led it "down the garden path" to grant the preliminary injunction based on half-truths. qad., inc., 770 F.Supp. at 1266 n. 15.
 
 
 22
 qad contends that these factual findings are clearly erroneous. It argues, for example, that the court's determination that Pam Lopker lied about the originality of MFG/PRO stems from its misunderstanding of computer terminology. When she said that MFG/PRO was wholly original, she was referring to the source code, not the entire program. Source code is the actual text of a computer program--the instructions written by the programmer and translated by the computer. qad asserts that "field names," "program names," and "function names," by contrast, define the conceptual boundaries of a computer program, and will invariably be the same in some cases when one deals with two programs targeted at the same market (here, manufacturing). For example, it would not at all be surprising for two such programs to name component programs "ar," "ap," "gl," and "mf" for "accounts receivable," "accounts payable," "general ledger," and "manufacturing." Thus, a program written to perform a particular task for a particular industry will often use the same generic "names" as any other program that performs the same task for the same industry. In finding similarities between HP250 and MFG/PRO, qad argues, the court misunderstood the distinction between source code and other features of a computer program such as its program and field names. To illustrate, qad points out, "cm__" is just such a naming convention that fails to prove qad copied from HP250; at any rate, in reaching his overall conclusion that MFG+ was a derivative work of MFG/PRO, Rubenstein relied far more heavily on similar source code than similar program and field names.
 
 
 23
 qad's arguments are off the mark. The point is not that dissimilarities may exist between the copying done by qad and the copying done by ALN, or that one of the two may have engaged in more egregious copyright infringement than the other. Rather, the point is that the district court found unmistakable evidence that qad had copied some portions of HP250 into its own software, and that it succeeded in convincing the court to issue a preliminary injunction without revealing that fact. Even assuming that much of MFG/PRO's source code was original, that does not obviate the fact that qad accused ALN of copying other elements of MFG/PRO (i.e., field and program names), even though it engaged in the same sort of copying from HP250. qad now tries to distance itself from several of the positions it took at the injunction hearing, arguing, as noted, that similar field and program names in two programs do nothing to show copying. It was precisely such flip-flopping that the district court found particularly disingenuous:
 
 
 24
 Without evincing so much as a blush, qad has now responded [to ALN's affirmative defenses] in a manner that ... contradicts its earlier position at the [injunction] hearing.... qad's effort at a 180? turnabout in its new argument is perhaps the worst possible example of a plaintiff "mending his hold" in the midst of litigation.
 
 
 25
 qad, 770 F.Supp. at 1269-70 (citations omitted). In sum, qad took two positions at the injunction hearing: first, that MFG/PRO was an entirely original work, and second, that ALN must have copied qad's original work because of similarities between MFG+ and MFG/PRO. The first is not completely true, and the second, while perhaps true, can also be said of the similarities between MFG/PRO and HP250. The district court did not abuse its discretion, therefore, in dissolving the injunction based on qad's less-than-candid posture at the injunction hearing.
 
 
 26
 AFFIRMED IN PART, DISMISSED IN PART.
 
 
 
 [1]
 Other rulings in this extraordinarily contentious dispute include, in chronological order, qad., inc. v. ALN Assoc., Inc., 18 U.S.P.Q.2d 1122 (N.D.Ill.1990) (dismissing qad's trade secret count, and awarding Rule 11 sanctions to ALN, based on qad's persistent failure to identify a claim); qad., inc. v. ALN Assoc., Inc., 1990 WL 93362 & 1990 WL 106540, 1990 U.S. Dist. LEXIS 8350 (N.D.Ill.1990) (issuing further sanctions against qad); qad., inc. v. ALN Assoc., Inc., 18 U.S.P.Q.2d 1129 (N.D.Ill.1991) (dismissing qad's tortious interference count); qad., inc. v. ALN Assoc., Inc., 757 F.Supp. 901 (N.D.Ill.1991) (dismissing qad's interference with business relationship count); qad., inc. v. ALN Assoc., Inc., 781 F.Supp. 561 (N.D.Ill.1992) (clarifying scope of earlier decision dissolving preliminary injunction); qad., inc. v. ALN Assoc., Inc., 1991 WL 183854, 1991 U.S. Dist. LEXIS 12887 (N.D.Ill. Sept. 12, 1991) (denying qad's motion to compel discovery); qad., inc. v. ALN Assoc., Inc., 1992 WL 142650, 1992 U.S. Dist. LEXIS 8174 (N.D.Ill. June 11, 1992) (confirming that qad was precluded from pressing copyright infringement claims over related software manuals); qad., inc. v. ALN Assoc., Inc., 1992 WL 142648, 1992 U.S. Dist. LEXIS 8201 (N.D.Ill. June 11, 1992) (granting attorney's fees and expenses relating to qad's bad faith conduct)
 
 
 [2]
 Incidentally, in a subsequent decision in this case, qad., inc., 1991 WL 183854, at * 1 n. 1, 1991 U.S. Dist. LEXIS 12887, at * 2 n. 1, the district court commented, "the granting of summary judgment dismissing qad's [copyright infringement count] was not a final order--and hence was not appealable as such. Presumably qad's appeal is predicated [solely on dissolution of the] July 17, 1989 Preliminary Injunction Order." Id
 
 
 [3]
 The court discovered, among other things, that a comparison of HP250 and MFG/PRO revealed that qad "copied much of the selection, order, arrangement and definitions of fields from HP250 to MFG/PRO," qad., inc., 770 F.Supp. at 1263 (footnote omitted), that MFG/PRO and HP250 employed "strikingly similar techniques to log the development, modifications, and changes," id. at 1264, and that both shared "program naming conventions," used "substantially similar reorder strategies," "identical average inventory usage formulas," and similar "documentation styles." Id. Moreover, the court learned that because of qad's prior relationship with HP, it had extensive access to HP250 and its manuals, confirming that qad had the capability to copy HP250. Finally, an inference of copying was raised by the fact that a qad notebook entry in 1985 contained Pam Lopker's handwritten instruction to "copy HP250." Id. at 1263