# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3626

BURLINGTON NORTHERN & SANTA FE RAILWAY
CO., CONSOLIDATED RAIL CORPORATION, CSX
TRANSPORTATION, INC., et al.,

*Plaintiffs-Appellants*,

v.

BROTHERHOOD OF LOCOMOTIVE ENGINEERS,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01C7743—**Joan B. Gottschall**, *Judge.*

———————

ARGUED APRIL 1, 2004—DECIDED MAY 4, 2004

———————

Before FLAUM, *Chief Judge*, COFFEY, and EVANS, *Circuit Judges.*

FLAUM, *Chief Judge.* Six freight rail carriers brought this action under the Railway Labor Act ("RLA") 45 U.S.C. § 151 *et seq.*, seeking injunctive relief against threatened strikes by the Brotherhood of Locomotive Engineers ("BLE"). The BLE threatened to strike in response to the rail carriers' decisions to adopt remote control technology and to employ members of a rival union to operate the remote control

devices. The district court concluded that the dispute was a "minor dispute" subject to mandatory arbitration under § 3 First of the RLA, 45 U.S.C. § 153 First (i) and granted a preliminary injunction to preserve the jurisdiction of the special board of adjustment. The special board of adjustment resolved the dispute predominantly in favor of the rail carriers. The BLE then moved to dismiss the rail carriers' complaint. The district court agreed with the BLE that the preliminary injunction was no longer necessary to maintain the status quo pending resolution by the special board of adjustment. The district court entered an order dissolving the preliminary injunction and dismissing the action. The rail carriers now appeal and we affirm the decision of the district court.

## I. Background

The Federal Railway Administration issued guidelines in February 2001 regarding the operation of remote controlled locomotives. Shortly thereafter, the plaintiff rail carriers[1] announced their intentions to train remote control operators ("RCOs") and to implement remote control operations pursuant to the Federal Railway Administration guidelines. The rail carriers signed a letter of intent with the United Transportation Union ("UTU") in September 2001, indicating their plan to assign RCO positions to conductors and trainmen represented by the UTU. In October 2001, the BLE wrote to the rail carriers to communicate its belief that the BLE's collective bargaining agreements with the rail carriers entitled BLE-represented

---

[1] The rail carriers that are parties to this action are the Burlington Northern and Santa Fe Railway Company; Consolidated Rail Corporation; CSX Transportation, Inc.; Kansas City Southern Railway Company; Norfolk Southern Railway Company; and the Union Pacific Railroad Company.

locomotive engineers to the new RCO positions. The BLE threatened to strike if its demands were not met.

The rail carriers then filed an action in the district court seeking declaratory and injunctive relief. Before the district court, the BLE characterized the dispute as a "major" one under the RLA, arguing that the rail carriers' failure to assign the RCO positions to BLE-affiliated locomotive engineers worked a unilateral change to the existing collective bargaining agreement. The BLE contended that the rail carriers' unilateral actions entitled the members of the BLE to respond with unilateral action in the form of a strike if the parties were unable to resolve the dispute. The district court was not persuaded by the BLE's position. The district court found that the rail carriers had presented an arguable contractual justification for their assignment of RCO positions to non-locomotive engineers. Therefore, the dispute was "minor" under the RLA and subject to compulsory arbitration, the district court held. The district court preliminarily enjoined the BLE from engaging in any strikes or other "self-help against the plaintiffs over any disputes concerning the plaintiffs' use or plans to use remote control technology . . . until a hearing is held and final judgment entered on the complaint herein." *Burlington Northern and Santa Fe Ry Co., et al. v. Brotherhood of Locomotive Eng'rs, et al.*, No. 01 C 7743 (N.D. Il. Jan. 14, 2002) (order granting preliminary injunction).

Thereafter, the parties submitted the dispute to Special Board of Adjustment #1114 ("SBA"). In January 2003, the SBA concluded that the BLE's collective bargaining agreements with the rail carriers did not require the assignment of the RCO positions to locomotive engineers represented by the BLE. The BLE did not violate the anti-strike injunction during arbitration.

Upon learning of the adverse ruling by the SBA, the BLE began to publicly oppose the use of remote control technol-

ogy, but it did not strike. The rail carriers allege that the BLE has demonstrated its opposition to the award in the following ways: (1) the BLE website announced the BLE's intention to set up "urgent meetings" with the Federal Railroad Administration and National Carriers Conference Committee to resolve the controversy created by the implementation of remote control technology; (2) an article in a trade journal communicated the BLE's belief that remote control would continue to be controversial despite the SBA's award; (3) the BLE filed a request for clarification of the arbitration award with the SBA; (4) the BLE's New York State Legislative Board informed the Superintendent of the CSX Railroad that the BLE believed remote control to pose an immediate threat to the safety of locomotive engineers, and that the CSX Railroad must address the BLE's safety concerns or face the possibility of a strike by the BLE of the CSX Railroad; (5) the BLE organized rallies to secure the adoption of local ordinances banning remote control; (6) the BLE encouraged its members to document the use of remote control in particular circumstances and to take pictures of accidents involving remote-controlled locomotives; and (7) the BLE organized a national "informational picket" against the use of remote control.

Several weeks after the SBA entered its order, the BLE submitted to the district court a motion to dismiss the rail carriers' complaint as moot. The BLE claimed that the SBA had fully and finally resolved the dispute and that "there no longer is any threat of a strike against any of the railroads." The rail carriers opposed the motion, arguing that remote control "remains perhaps the most contentious issue in labor relations in the railroads today." The district court reasoned that the sole purpose of the preliminary injunction was to preserve the status quo pending resolution of the dispute by the arbitrator and concluded that this purpose was effectuated after the final arbitration award issued. Additionally, the district court concluded that the sole

controversy presented by the complaint— whether the dispute was major or minor for purposes of the RLA—had been resolved. The district court dissolved the preliminary injunction and dismissed the case on September 15, 2003.

## II.  Analysis

On this appeal we are asked to review the decision of the district court to dissolve the preliminary injunction barring the BLE from engaging in economic self-help against the rail carriers regarding the implementation of remote control technology. This Court applies the same standard of review to an order dissolving a preliminary injunction as to an order granting or denying a preliminary injunction, *Centurion Reinsurance Co., Ltd. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987), that is, the highly deferential abuse of discretion standard. *qad. inc. v. ALN Associates, Inc.*, 974 F.2d 834, 837 (7th Cir. 1992). No deference is due to a "decision to deny a preliminary injunction that is premised on an error of law." *United Air Lines, Inc. v. Int'l Ass'n of Machinist and Aerospace Workers*, 243 F.3d 349, 361 (7th Cir. 2001). The district court's determinations of law are reviewed *de novo* and its determinations of fact are reviewed for clear error. *Centurion Reinsurance*, 810 F.2d at 143.

The rail carriers argue that the district court applied an inappropriate legal standard and abused its discretion in dissolving the preliminary injunction. The district court's order states that the sole reason that it had granted the preliminary injunction was to "maintain the status quo until an arbitrator could resolve the dispute . . . . Because the final arbitration award has been issued . . . the court dissolves the preliminary injunction." *Burlington Northern and Santa Fe Ry Co., et al. v. Brotherhood of Locomotive Eng'rs, et al.*, No. 01 C 7743 (N.D. Il. Sept. 15, 2003) (order dissolving preliminary injunction and dismissing the case) (internal citation omitted). In the rail carriers' view, the

district court's order demonstrates that the district court underestimated the scope of the federal court's power to enjoin strikes under the RLA. They submit that, because the RLA prohibits a union from striking over a minor dispute regardless of the status of arbitration, *Brotherhood of Locomotive Eng'rs v. Louisville and Nashville R.R. Co.*, 373 U.S. 33, 40-41 (1963), the district court erred in concluding that the preliminary injunction had served its purpose merely because the SBA had issued an award. The rail carriers urge that the preliminary injunction remains appropriate notwithstanding the SBA's award because the BLE continues to describe the remote control issue as "contentious" and to publicly criticize its implementation.

We agree with the rail carriers that a strike by the BLE over remote control—whether instigated before or after the conclusion of arbitration—would frustrate the intention of the RLA to avoid "any interruption to commerce or to the operation of any carrier engaged therein" and to secure the "prompt and orderly settlement of all disputes growing out of . . . the interpretation or application of agreements covering . . . working conditions*." See* 45 U.S.C. § 151(a). But the existence of the minor dispute, alone, cannot justify an injunction in perpetuity. A federal court may enjoin a labor strike arising out of a minor dispute in order to assure compliance with the mandatory arbitration procedures of the RLA, notwithstanding the anti-injunction section of the Norris-LaGuardia Act, 29 U.S.C. §§ 101-105, but "courts should hesitate to fix upon the injunctive remedy for breaches of duty owing under the labor laws unless that remedy alone can effectively guard the plaintiff's right." *Chicago & N. W. Ry. v. United Transp. Union*, 402 U.S. 570, 582 (1971) (quotation omitted.) "This clearly implies that where there are other effective means available to accomplish that end, injunctions should not issue." *United Air Lines*, 243 F.3d at 363.

The district court did not err in concluding that the purposes of the RLA would not be effectuated by continuing the anti-strike injunction against the BLE. The BLE has complied with the arbitration award. It has not threatened to strike or engage in other economic self-help over the remote control issue since it was enjoined from doing so in January 2002. In light of the BLE's withdrawal of strike threats, this litigation is not analogous to *Brotherhood of Locomotive Engineers*, wherein the Supreme Court upheld the issuance of an anti-strike injunction after the conclusion of arbitration. In that case, the union announced a "definite strike deadline" after arbitration had concluded. *See Brotherhood of Locomotive Eng'rs*, 373 U.S. at 35, 40-42. Similarly, in *Chicago & N. W. Transportation Co. v. Rwy. Labor Executive's Ass'n*, 908 F.2d 144 (7th Cir. 1990), where this Court upheld a permanent injunction against a strike concerning a minor dispute, the union was actively threatening to strike.

None of the evidence that the rail carriers cite in order to demonstrate BLE's ongoing "bitterness and resistance to remote control" convinces us that the BLE intends to violate its statutory duty to refrain from engaging in economic self-help. To the contrary, all of the BLE's actions of which the rail carriers complain are outside the scope of the activities previously enjoined by the district court. As the rail carriers conceded at oral argument, the preliminary injunction did not bar the BLE from lobbying the Federal Railroad Administration or state and municipal regulatory bodies, engaging in informational picketing, or negatively characterizing the arbitration award on its website. Further, neither the BLE's communication with the CSX Railroad regarding actions that the BLE believed were inconsistent with the arbitration award, nor the BLE's encouragement of documentation of remote control-related accidents and injuries, demonstrates any intention to engage in economic self-help. Finally, of the two alleged strike threats, one was

clarified by the BLE to be not a strike threat, while the other was made without the imprimatur of the national office of the BLE, and both were resolved peacefully. These instances do not exhibit a current or anticipated breach of the BLE's contractual duties to the rail carriers or statutory duty under the RLA to refrain from economic self-help. Rather, the BLE's post-arbitration actions demonstrate that the BLE has abandoned hope of a contractual remedy, and has adopted a new strategy for protecting the jobs of its membership: the reduction or elimination of remote control at the regulatory level. The RLA injunction power does not extend to mere "labor strife" about industry practice. Because the BLE has complied with the arbitration award and has not threatened to strike, it is clear that a strike injunction is not "the only practical, effective means of enforcing the [union's] duty to exert every reasonable effort to make and maintain agreements." *Chicago & N. W. Ry.*, 402 U.S. at 583.

The rail carriers also claim that the district court erred because it failed to subject the BLE's motion to dissolve the preliminary injunction to sufficiently rigorous scrutiny. As discussed above, the district court determined that there was no longer any basis for the injunction because the SBA's jurisdiction had been preserved throughout its resolution of the minor dispute. The rail carriers maintain that the district court reached an erroneous result because it did not apply the appropriate test. In their view, the district court should have evaluated whether the BLE had demonstrated that the harm caused by the injunction outweighed the continuing need for it in light of changed circumstances. *Stewart v. General Motors, Corp.*, 756 F.2d 1285, 1291 (7th Cir. 1989). The BLE contends that this analysis would have compelled a ruling in their favor because there has been no change in circumstances, as demonstrated by the ongoing contentiousness over remote control, nor was the preliminary injunction causing the

BLE any hardship, since no strike in regards to the minor dispute would be lawful under the RLA.

We disagree. Despite the BLE's continuing frustration with the implementation of remote control technology, the BLE's withdrawal of strike threats and compliance with the arbitration award represent legally significant changes in the circumstances from those existing at the preliminary injunction hearing. Further, the rail carriers have not persuaded us that the BLE continues to perceive the minor dispute as ongoing, despite its compliance with the SBA award and withdrawal of strike threats. The BLE's lobbying efforts to eradicate remote control actually undermine the rail carriers' view that the BLE still perceives a contractual right to the RCO positions: if the BLE were to prevail before the regulatory agencies, the rail carriers would be forced to abandon remote control, and the BLE would have no RCO positions to gain for its membership. As the BLE is no longer suggesting that it will violate its statutory duty to refrain from striking over the implementation of remote control technology, the *Chicago River* exception to the Norris-LaGuardia Act's prohibition of interference by the federal courts no longer applies. "Judicial intervention in labor disputes is not favored; and no order is needed to compel what is already being done." *Chicago & N. W. Transportation Co.*, 908 F.2d at 153.

### III. Conclusion

The judgment of the district court is AFFIRMED.

A true Copy:

    Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—5-4-04